## The Winfield Water Company v. The City of Winfield.

1. Water Company—*Contract with City—Recovery of Water Rent.* Where a water company enters into a contract with a city to supply the city and the inhabitants thereof with well-settled and wholesome water for domestic purposes, and also for the extinguishment of fires and other public purposes, and the city, in consideration thereof, agrees to pay hydrant rentals for the use of certain hydrants for the extinguishment of fires, flushing of gutters, and other city purposes, *held*, that in an action brought to recover the contract price for supplying water to the city at the hydrants, where no claim to recover as upon *quantum meruit* is made by the plaintiff, the plaintiff must prove substantial compliance with the contract, not only with reference to the quantity of water furnished, but the quality as well, before it can recover at all.

2. Pleadings —*Erroneous Instruction—Harmless Error.* In such an action, where no allegation of the value of the water furnished or of the services performed by the water company is contained in the petition, and where no claim for damages is contained in the answer, but the issues presented by the pleadings are, whether or not the plaintiff has performed its contract, and whether or not such performance has been accepted by the city, although it was error for the trial court to instruct the jury that the plaintiff might recover the value of the water furnished, and if no value was shown might recover nominal damages, where the court fairly and fully instructed the jury in all other respects, the case will not be reversed because of such erroneous instruction.

3. Water, *When to be Paid for.* Where the water company entered into a contract to supply the city and its citizens with well-settled and wholesome water, the city is not bound to accept and pay for the water furnished for public purposes unless it is of the quality provided for by the contract.

4. Acceptance —*What Constitutes.* The mere fact of occasional use by the city of the water actually furnished does not necessarily constitute an acceptance. The mere receipt and consumption of water does not necessarily imply acceptance. There must be a fair opportunity for examination and rejection before acceptance can be inferred from receipt.

*Error from Cowley District Court.*

Action by the *Winfield Water Company* against the *City of Winfield* to recover water rents. The plaintiff company

recovered a judgment for $1 only, and brings the case to this court. The material facts are stated in the opinion.

*Eaton, Pollock & Love*, for plaintiff in error.

*McDermott & Johnson*, for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: This case is argued and submitted with the case of *City of Winfield v. Water Co.*, ante, p. 70. This action was brought by the water company against the city to recover hydrant rentals for the period of six months, from January 15 to July 15, 1890. In its amended petition, the water company alleges that on the 17th day of January, 1883, the mayor and councilmen of the city of Winfield duly passed a certain ordinance No. 167. The portions of said ordinance which are material to the consideration of this case — except the eighth section thereof, which makes provision for extensions of the mains and for additional hydrants, for which the city was to pay a rental of $65 each — are copied in the opinion in the preceding case. The petition avers the acceptance of the provisions of the ordinance by the parties therein named, and also by the water company as their assignee. It also avers the construction of the system of waterworks; the acceptance of the same by the defendant; the furnishing of water in accordance with the terms thereof to the city; and the payment of rental by the city in accordance with the terms thereof until the 15th day of July, 1890. It avers the continued use of the water for all public purposes named in the ordinance from the 15th day of January to the 15th day of July, 1890. It avers extensions of the water mains in accordance with the terms of the ordinance, and the addition of 29 hydrants, which it alleges were in use during said period of six months, and that water was furnished the city out of such additional hydrants during that term. It avers that the plaintiff performed all the provisions of its contract, and claims that by reason thereof the city became indebted to it for the use of said hydrants in the sum of $2,442.50. It

alleges that a sworn and itemized statement of such indebtedness was duly presented to the city council, and that the defendant refused to pay the same, refused to allow said account, and asks judgment against the city for said sum. There is no averment in the petition as to the value of the water furnished nor of the value of the services rendered the city under the contract during the period for which payment is claimed.

The answer contains, first, a general denial; second, an averment that the plaintiff had failed, neglected and refused to comply with the terms of the contract; that the plaintiff has persistently, for a long period of time, refused to supply said city and the inhabitants thereof, for domestic and sanitary purposes, well settled, wholesome water, and has refused to furnish the inhabitants of the city with water according to the prices and charges agreed upon and stipulated in said contract, but extortionately, and without any authority from the defendant, imposed, and tried to impose, other and different prices and rates for water furnished, and refused to furnish water for domestic and sanitary purposes to citizens and others desiring the use of said water at the prices and rates provided in said contract; and also alleges that defendants have failed to transact the business pertaining to the waterworks within the corporate limits of Winfield; that it has failed to have a meeting of its board of directors in said city, and has only been represented by an inexperienced agent to manage its affairs in said city. It also denies that it ever entered into any contract for the additional hydrants mentioned in the petition, and asks judgment for its costs. No claim is made for damages because of the alleged failures of the plaintiff to comply with the contract.

The plaintiff, replying, alleges that the source of supply for said waterworks was the Walnut river; that the defendant permitted the water of said river to be obstructed by a dam, and to be contaminated by sewers and drains from the city; and alleges that if the water is not settled or wholesome, such condition was brought about wholly by the acts of the

defendant. A jury was impaneled, before which a large amount of testimony was taken. The jury rendered a verdict for $1 in favor of the plaintiff, and the plaintiff brings the case to this court, alleging various errors.

Most of the evidence in the case is directed to the question as to whether or not the water furnished was well settled and wholesome. There seems to have been little, if any, complaint as to the quality of the water prior to April. From some time in April till the middle of July, according to the testimony of the witnesses for the plaintiff, the water was roily at various times, and was also offensive to the taste and smell. Physicians also testified that in their judgment it was unwholesome. Experts were also examined on behalf of both parties, who testified with reference to the healthfulness and unhealthfulness of the water. Testimony was also offered showing the manner in which the system was constructed, the source of supply, the mode of distribution and of settling, and the various extensions that had been made of the system. Many exceptions are preserved to the rulings of the court on the trial. Testimony was also offered with reference to the causes tending to contaminate the source of supply.

It appears that, during the period for which the plaintiff seeks to recover, the water was drawn from the Walnut river, at a point about 1,000 feet above the original source of supply; that the reservoir, which was the only place provided for settling the water, is located on the other side of the city from that where the pumps are placed, and that in order to fill the reservoir water is pumped directly from the river through the whole system of pipes distributing the water through the city. When the pumps are not in use, the water flows back through the system from the reservoir to the various consumers. In the court's instructions to the jury are included the following:

"4. If the plaintiff has satisfied you, by the preponderance of the evidence, that it furnished water in all of the hydrants for which it claims pay, through and by means of a

system of waterworks in substantial compliance with all of these ordinances and contract, and substantially of the kind and quality mentioned in said contract and ordinances, ready for use by the defendant at all times during the term for which it claims pay in this case, then the plaintiff will be entitled to recover the contract price for all hydrants which you may find were actually furnished, with 6 per cent. interest from July 25, 1890, to date.

"5. The defendant claims that the plaintiff did not, during the term for which pay is claimed, furnish the city with water of the kind and quality required by the contract, and did not keep and maintain the system of waterworks required of it in the contract; and this brings us to the contested issues between the plaintiff and defendant. The defendant also sets up other defenses to this action, but the court being of the opinion that these other defenses are not maintainable, you are not to consider them. If you settle the issue of whether the plaintiff did or did not furnish water ready for use in the hydrants during the term charged for, through a system of waterworks, of the kind and quality as required by the contract, in favor of the plaintiff, then that ought to end the case in favor of the plaintiff, and you should return a verdict for the plaintiff for the contract price; but if you should find this issue in favor of the defendant, then it will become your duty to inquire further in the premises. If you should find that the plaintiff has not complied with the terms of the contract on its part, in furnishing the defendant with water of the kind and quality through a system of waterworks as it ought to have done, that will not relieve the defendant from all liability, if you should further find that the defendant used the water during the term for which pay is claimed for the purposes, or any of the purposes, for which it has the right to use the same under the contract.

"6. The law will not permit one party to a contract to have the fruits thereof, or a part of the same, and then refuse to render to the other party to such contract any compensation, simply because such other party has broken the contract on his part. So, in this case, if you should find that the defendant used the water furnished by the plaintiff during the term for which pay is claimed for any of the purposes for which defendant had the right to use the same, then the defendant must be required to pay the plaintiff reasonable compensation for hydrant rental, notwithstanding the fact

that the plaintiff may have failed to comply with the contract on its part.   And, in this last event, the question of whether the defendant did or did not use the water for any of the purposes it had the right to use it may become material in the case; but if you find that the plaintiff has on its part complied with the contract, then the question of whether the defendant did or did not use the water is entirely immaterial in this case.

"7.  The contract provides that the plaintiff shall at all times furnish the defendant 'an ample quantity of well-settled and wholesome water.'   The defendant claims that this was not done.   The plaintiff, in reply, denies this; but says, if it was not done, that the fault lies with the defendant, because of the place where the defendant had condemnation of grounds and waterway made, being in a certain mill pond; and because, further, that the defendant has permitted to be constructed, and constructed, certain sewers and drainage from the city into the river in such a way as to contaminate the water at the place from where the plaintiff must obtain the same, as it has constructed its works.   If you should find that the place where said water is obtained was condemned by the defendant, and that the plaintiff or its as-signors erected the waterworks at such a place after the passage of the ordinance and contract under which the plaintiff claims pay, and after such assignor or plaintiff had an opportunity to examine such place, then you ought to further find, that the plaintiff and its assignors agreed and undertook to furnish water of the kind required in the contract from such place.   If the plaintiff or its assignors had an opportunity to examine the place from whence the water was to be obtained before the plaintiff or its assignors expended any money under the contract, and then undertook to furnish well-settled and wholesome water from such place, it must do so or suffer the consequences, unless the defendant has by its own conduct contaminated such place. .

"8.  If, since the erection of the waterworks, the defendant has, by the construction of sewers leading into the Walnut river, so contaminated the waters of said river that the plaintiff cannot, with reasonable diligence, furnish the defendant with well-settled and wholesome water, then the defendant is to blame for the injury of which it complains in this case, and in that event it cannot be heard to assert such defense. The law will not permit any person or corporation to take

advantage of his or its own wrong. So, in this case, if you should find that the defendant is to blame, by reason of the building of the sewers and drainage complained of by the plaintiff, for the bad condition of the water furnished, then you ought not to hold the plaintiff responsible therefor; but, on the other hand, if you should not find the defendant in fault in that behalf, then you ought to hold the plaintiff responsible for the unsettled and unwholesome condition of the water furnished, in case you should find the same to be in such condition.

"9. If you should find that the plaintiff has violated the contract under which it claims pay, and should further find that the defendant has used the water during the term for which pay is claimed, it will then become your duty to fix the amount which the plaintiff ought to have, as reasonable compensation for the hydrant rental for such term. You should assess and fix such sum, under the evidence in the case, as best you can, and you should not fix the same without regard to the evidence. If there is no evidence in the case by which you can fix such compensation, you cannot fix the same arbitrarily and according to your own notions. If there is no evidence in the case from which you can fix such compensation, you can only award the plaintiff some nominal sum, such as 1 cent, $1, or some other small sum. . . ."

"11. The contract in this case requires the plaintiff to erect and maintain a system of waterworks of a certain kind, and to furnish to the defendant, from the Walnut river, at a place to be mutually agreed upon, well-settled and wholesome water for fire and fire-drilling purposes, for washing and flushing gutters and sewers, for a certain agreed price, and to furnish said defendant certain water at public places for drinking purposes free of charge; and the contract requires the defendant to pay for the water to be furnished a certain rental, and to enact all ordinances necessary to protect the waterworks property and the place of water supply, and to protect the plaintiff in the collection of its water rates from the inhabitants of the defendant at the agreed rates; and the contract is of such a nature as to require the utmost good faith toward each other on the part of both the plaintiff and defendant. This contract requires from the plaintiff the exercise of all reasonable and ordinary care and diligence on its part to comply with its part of the contract. And the contract requires the same kind of care and diligence from the defend-

ant on its part and on its share of the contract. The law presumes that each of the parties to this contract contemplated and included therein any and all reasonable contingencies and conditions existing at the time of the making of said contract, as well as all reasonable contingencies and conditions that might be reasonably likely to flow out of the conditions and contingencies then existing. The law does not expect any person to comply with the conditions of an impossible contract, nor does the law require of any person any vain or foolish thing. So, in this case, if you should find that the plaintiff has exercised ordinary care and diligence in the furnishing of water for the defendant, and should further find that, the plaintiff has failed to furnish water of the kind required, and that its failure is the natural and reasonable result of the conditions and contingencies contemplated by the parties to the contract at the time it was made, then the plaintiff would be entitled to recover under the terms of the contract, notwithstanding its failure to furnish water of the kind required. This contract does not bind the plaintiff to furnish well-settled and wholesome water to the defendant under any and all conditions; but it does bind the plaintiff to exercise all reasonable care and diligence so to do, by the means, under the plan and from the place as set forth in the contract, in the light of all the conditions and contingencies which could have been reasonably contemplated by the parties at the time it was made, and which might be reasonably expected to result from natural causes or the acts of God. The plaintiff cannot be held responsible for any damages which result under this contract from natural causes, or the act of God, and which cannot be overcome by reasonable care and diligence on the part of plaintiff. But the plaintiff must be held for all such damages which can be so overcome by the exercise of such care and diligence."

The theory of the plaintiff in this case fairly appears from the following instruction which was asked and refused:

"If you believe from the evidence that the plaintiff furnished and the defendant received and used water from the fire hydrants for which rental is claimed in this action between the 15th day of January, 1890, and the 15th day of July, 1890, then you will return your verdict in this cause for the contract price claimed for in the petition of the plain-

tiff, together with 6 per cent. interest from the 15th day of July, 1890."

It will be observed that this instruction leaves out of consideration the quality of the water, and any and all objections that might have been urged against it. It was not claimed on the trial that there had been any affirmative acceptance of the water by the city, but the only claim of acceptance made by the plaintiff was founded on the receipt and use of the water by the city. No instruction was asked with reference to the effect of the evidence introduced as tending to prove acceptance on the part of the city, nor was any instruction asked with reference to the proof necessary to establish acceptance.

The counsel for the plaintiff in error contend that this case was tried by the court on a wrong theory, and particularly in announcing the rule to be that, regardless of the condition and quality of the water, the plaintiff would be entitled to recover what said water was reasonably worth, when in fact no such issue was made by the pleadings, and contend that the plaintiff was entitled to recover the entire contract price or nothing; that it was prejudicial error for the court to try the case on the theory that the plaintiff was entitled to recover on *quantum meruit*. As before stated, there was no allegation of value in the plaintiff's petition, and no claim made for damages in the defendant's answer, so that the issue presented by the pleadings was as to the performance or nonperformance of its contract by the plaintiff. On the trial, the court held that the defendant could not avail itself of a failure on the part of the plaintiff to transact the business of the corporation in the city, or of any failure to supply water to private individuals at the rates specified in the ordinance, and confined the defendant's proof under its answer to evidence as to the quality of the water and to the manner of supplying the same. The plaintiff contends that its case was made out when it proved the making of the contract and that the water was furnished for and used by the city, and that the defendant could only reduce the contract price by pleading

the facts on which its claim for a reduction was based, and establishing them by proof.    Plaintiff in error contends that the evidence in this case all shows the acceptance and use of the water by the city; that water when furnished by a water company is personal property; that the parties to this action are controlled by the rules applicable to executory contracts for the sale and delivery of personal property, and that the acceptance of the article sold precludes the purchaser from afterwards claiming in his defense that the goods were inferior in quality or quantity.    In support of this general proposition many authorities are cited, and we are not inclined to take issue with the general principle as stated with reference to ordinary sales and delivery of personal property; but in this case it is necessary for us, first, to determine whether the evidence does show, as claimed by the plaintiff, such a clear and unequivocal acceptance of the water.

Generally the buyer has a right to examine the goods and ascertain their quality before he determines whether to accept or not, and a retention by him for a time sufficient for his examination, and no more, is not an acceptance. (3 Pars. Contr., 6th ed., 44.)    There can be no acceptance where there has been no opportunity of rejecting. (1 Benj. Sales, 176; *Phillips v. Bistoli*, 2 Barn. & C. 511.)    All the authorities are to the effect that the acceptance of property sold depends on the nature of the article, the mode of delivery, and the possibility of examination and return; and while some light may be thrown on the question in this case by the decisions of the courts in reference to the sale and delivery of ordinary chattels, we must not lose sight of the facts and circumstances connected with this transaction, and of the marked peculiarities which attend a sale and delivery of water through a system of waterworks.    In the case of *Pearson v. Crooks*, 115 N. Y. 539, the court says:

"The mere use of an article on trial may in some cases be contemplated by the parties as a means by which the vendee is to ascertain whether it corresponds in quality with the article agreed to be furnished.    In such a case mere use is not

inconsistent with a supposed right to reject for cause, and will not constitute an acceptance."

The general rule is stated in Benjamin on Sales. In §§ 701, 706, the author says:

"The buyer in entitled before acceptance to a full opportunity of inspecting the goods to see whether they correspond with the contract."

"Where goods are sent to the buyer in performance of the vendor's contract, the buyer is not precluded from rejecting them by merely receiving them. The receipt is one thing, and the acceptance another, but receipt will become acceptance if the right of rejection is not exercised within a reasonable time, or if anything be done by the buyer which he would have no right to do unless he was the owner of the goods."

"Where the subject-matter of the sale is not in existence, or not ascertained at the time of the contract, an engagement that it shall, when existing or ascertained, possess certain qualities, is not a mere warranty but a condition, the performance of which is precedent to any obligation of the vendee in the contract, because the existence of these qualities, being part of the description of the thing sold, becomes essential to its identity, and the vendee cannot be obliged to receive and pay for a thing different from that for which he contracted." (2 Benj. Sales, 1152.)

And again, the same authority (on page 1153) says:

"In actual practice, the only difficulty which arises in these cases grows out of controversies whether the buyer has actually accepted the goods, and thus become owner. On this point the cases show that acceptance does not take place by mere retention of the goods for the time necessary to examine or test them, nor by the consumption of so much as is necessary for such examination and testing; and it is always a question of fact for the jury whether the goods were kept longer, or whether a larger quantity was consumed than was requisite to determine the buyer to decide whether he would accept or reject."

The testimony in this case shows that the water was received with little or no complaint up till April. There is testimony showing that it was bad during part of the time in April, and

the testimony seems to show that it became worst in June, after a flood.   It does not appear to have been of uniform quality for any considerable number of days together, nor, according to the contention of the plaintiff, does it appear to have been of uniform quality throughout the system.   The plaintiff contends that the condition of the water in those portions of the system which were required by subsequent ordinances passed by the city after making the first contract was due to what are termed "dead ends" in the system, being pipes connected only at one end with the main system, and for that reason affording no circulation of water.   It is contended that in these dead ends water will stagnate, and become offensive in taste and odor.   The principal uses of the water by the city were for the extinguishment of fires, flushing of gutters, etc., and these uses were but occasional, and would not require any test as to their sanitary qualities, although the unsettled or muddy condition might perhaps be easily detected by the eye.   Even the muddy condition of the water at the hydrants might exist, according to the plaintiff's own showing, because of settling of sediment in the dead ends leading from the hydrants to the mains.   Can it be said that, because the city has used foul and unwholesome water in the extinguishment of a fire, or in the extinguishment of occasional fires, or the occasional flushing of gutters, that it has thereby waived all objection to the quality of the water and become bound for the purchase price? or can it be said that, because of such receipt and use, the burden, in an action of this kind, is cast upon the city of showing how much less the value of the water used was than the value of such water as the contract called for would have been?

The trial court treated this as an action to recover the reasonable value of the water consumed, but the plaintiff introduced no evidence as to its value, but relied on its proof of performance of the contract, and acceptance by the city. Defendant introduced no evidence with reference to the value of the water, or for the purpose of proving damages sustained by the city.   We are inclined to think that the court erred in its theory of the case, and that, under the pleadings

and the proof, the court should have instructed the jury, as claimed by the counsel for the plaintiff in error, that the plaintiff must recover all or nothing. But was this error prejudicial to the plaintiff? The court did instruct the jury that, if the plaintiff complied with its contract and the city received and used the water, that they must find for the plaintiff the full amount claimed. The court also instructed the jury that, if the water was contaminated through the fault of the defendant, it could not take advantage of its own wrong, or avail itself of such contamination as a defense. We are clearly of the opinion that, taking the whole charge together, the jury must have understood that, before they were called on to consider the question as to the value of the water received by the city, they must first determine that the plaintiff had violated its contract. The jury could only have found as they did, under the instructions of the court, by holding that the plaintiff had failed to furnish the city such water as it had agreed to furnish.

We think that the evidence in this case clearly shows that the water was not uniformly of the quality required by the contract. The plaintiff's own witnesses testified that during periods of high water it became muddy; that when the pump was running, the supply to consumers came directly from the river, in its unsettled condition. Plaintiff's own witnesses testified to the presence of algæ in the reservoir, and claimed that the offensive odor complained of by witnesses for the city was attributable to such growth. They also testified to the character of the water in the dead ends. It is true that the plaintiff's witnesses would seem to think that such conditions were unavoidable. On the other hand, the defendant claims that the plaintiff's system is defective; that no means have been provided for settling the water, as required by the contract; and it is suggested that the reservoir should be filled through an independent pipe, disconnected from the distributing system; that this would afford an opportunity for the water to settle in the reservoir before passing to the consumers. Various devices might be suggested for a mode of set-

tling the water before distribution. It is, of course, not for the court to say how that shall be-done. The plaintiff, however, has contracted that it will furnish well-settled water; and, in the absence of any showing that it is impracticable to do so, we fail to see how the court can relieve it of the obligation of the contract. There is some apparent difference of opinion as to whether this water is wholesome or not, some experts testifying that the fact that it is stinking does not necessarily render it unwholesome. We should be very loth to declare, as a matter of law, that water which was offensive both to the taste and the smell, unless attributable to something known not to be injurious to the human system, was wholesome water. We think the facts that fish died in tanks because of the condition of the water; that clothes washed at a laundry in it had an offensive odor after drying, which was attributable to the water; that it was so repulsive that people refused to drink it, tend strongly to prove that it was unwholesome, and the jury were undoubtedly of the opinion that the water was not such as the contract required. The court instructed them that this contract does not bind the plaintiff to furnish well-settled and wholesome water to the defendant under any and all conditions, but it does bind the plaintiff to the exercise of reasonable care and diligence to do so, by the means, under the plan and from the place set forth in the contract, in the light of all the conditions and contingencies which could have been reasonably contemplated by the parties at the time it was made, and which might be reasonably expected to result from natural causes or the acts of God; that plaintiff cannot be held responsible for any damages which result under this contract from natural causes or the act of God, and which cannot be overcome by reasonable care and diligence on the part of the plaintiff. This, certainly, was as favorable a statement of the law in that particular as the plaintiff was entitled to, and, when taken in connection with the other instructions, would require the jury to award the plaintiff the full amount of compensation provided by the contract, unless there had been an avoidable

and substantial failure on the part of the plaintiff to perform its contract.

Is this contract divisible? Plaintiff contends that it is. Plaintiff contends that the city is not entitled to well-settled and wholesome water for its uses, because any kind of water will put out fires and wash gutters. The question of divisibility of contracts is not always an easy one, and in this case we have to consider the question in two aspects: First, is it divisible into a contract between the city and the water company for water solely for public purposes, to be drawn from the hydrants, and a contract for water for private citizens, to be supplied through private connections? Plaintiff contends that it is so divisible. Again, may the plaintiff recover for such portion of the time as it supplies such water as is required by the terms of the contract, and may the city only defeat its claim for those days or other periods of time when it can show that the water was not such as was stipulated for? We have decided in the preceding case that the city alone can enforce the provisions of the contract against the water company, and that it is the duty of the city authorities to see that private citizens are supplied with such water as the ordinance requires. Further comment on that question is unnecessary here. The question as to the right of the water company to partial compensation in case it fails to perform its contract is not so easy to determine. We are of the opinion, however, that where the city continues to use the water, the plaintiff may recover such sum as it can show the water furnished to the city to be fairly worth. If it substantially complies with its contract during any semiannual period for which hydrant rentals became payable, we would think that the fact that it had failed to perform its contract during some preceding period would not bar a recovery for that period during which it had furnished such water and in such manner as the contract required. Where suit is brought, as in this case, to recover for hydrant rentals for six months, if it be shown that the plaintiff has failed to substantially com-

ply with its contract, the burden rests on the plaintiff to show the value of the service actually performed by it for the city, and the defendant would be entitled to show any damages sustained by it by reason of the plaintiff's failure. The plaintiff could not recover more than the value of the services rendered to the city over and above all damage occasioned by plaintiff's failure. It may be that there would be great practical difficulty in showing the actual value to the city of the water furnished; if so, it is not the fault of the city, but of the plaintiff. The rights of the parties are defined by the contract; and the party which violates the contract and fails to comply with its provisions must suffer rather than the innocent one. Were it not that by the provisions of this contract it is to continue for a long period of years, we should be inclined to hold that it is entire, and that a recovery can only be had by the plaintiff showing that it has complied with its terms. Courts only attempt to sever and divide the provisions of a contract into which the parties have deliberately entered when it is apparent they can do so and still preserve all the substantial rights of both parties. In the case of *McClurg v. Price*, 59 Pa. St. 420, the court held:

" Where the owner of a five-story tenement building leased it on a rental of $1,500 per year, payable quarterly, and gave possession of the first three stories to the lessee, and agreed to give possession of the remainder upon demand, which he afterwards refused to do, he cannot recover rent from the lessee for the use of the first three stories, as the contract must be regarded as an entirety, and the landlord who has failed to keep his contract to deliver complete possession to his lessee cannot recover from him for the use and occupation of a part of the demised premises."

The facts in this case, however, show that the city has, during all of the periods prior to the time for which this suit was brought, accepted, used and paid for the water under the contract. We think that, in any subsequent period of six months during which it may be shown that the plaintiff complied substantially with the requirements of the contract, it may recover the full contract price, but if it fails to so comply,

the burden will rest on it, as before stated, to show the value of the services performed for the city.

While, under the pleadings, the court erred in instructing the jury that the plaintiff might recover whatever the water furnished was shown to be worth, the error was in favor and not against the plaintiff, and resulted in giving the plaintiff a verdict for nominal damages and costs, where it otherwise would have been entitled to no verdict in its favor.

We perceive no material error in the record prejudicial to the plaintiff, and the judgment will therefore be affirmed.

All the Justices concurring.