## HARTEN *v.* LÖFFLER.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 91.  Argued January 26, 1909.—Decided February 23, 1909.

In an action by the vendee for damages, although the amount recovered is less than $5,000, if the vendor not only disputes the judgment but claims more than $5,000 as balance of purchase money this court has jurisdiction to review the judgment of the Court of Appeals of the District of Columbia.

Where its meaning is not clear, a contract is to be construed in the light of circumstances surrounding the parties when the contract was made and a practical interpretation given thereto. *Lowber* v. *Bangs,* 2 Wall. 728.

"About" is a relative, and frequently ambiguous, term, the precise meaning of which is affected by circumstances; and oral evidence is not inconsistent with, or contradictory of, a written contract which simply identifies property as shown on a diagram annexed thereto, and is admissible to show the intent of the parties in the light of the surrounding circumstances.

Where the vendee sues for breach of a contract to sell real estate and the benefit of the business and goodwill as well, the measure of damages is the differences between the purchase price and the market value at the time of the contract and evidence as to the value of each item is admissible.

A hypothetical question of value of property is not admissible when there is no evidence to support the hypothesis on which it is based.

29 App. D. C. 490, affirmed.

THE defendant in error, hereafter called the plaintiff, commenced this action against the plaintiff in error, hereafter called the defendant, in the Supreme Court of the District of

Columbia to recover damages for the refusal of the defendant to perform a written agreement made between the plaintiff and the defendant and his wife, by which the defendant agreed to convey certain premises on Brightwood avenue, or Seventh street, in the District of Columbia, to the plaintiff for the sum of $12,000.

The defendant denied the alleged agreement, and also pleaded a set-off to recover $20,000 damages against the plaintiff for the plaintiff's own failure to perform the agreement set up by defendant.

The plaintiff replied, denying the defendant's averments as to set-off, and the latter joined issue on plaintiff's replication.

A trial was had before a jury and terminated in a verdict for the plaintiff for $1,250, with interest on $250 from April 27, 1905, upon which judgment was entered.

Upon appeal to the Court of Appeals of the District, that court affirmed the judgment (29 App. D. C. 490), and the defendant sued out a writ of error from this court.

The material facts in the case are as follows:

The defendant, on the twenty-seventh of April, 1905, was the owner of a lot or parcel of land on Brightwood avenue, or Seventh street, a half mile north of Brightwood in the District of Columbia. On the date named the parties entered into an agreement, and the defendant and his wife signed the same, as follows:

"For and in consideration of the sum of twelve thousand dollars, two hundred and fifty dollars whereof is hereby acknowledged, I hereby agree to sell to Ernest Löffler the property, good will, license and fixtures, located on Brightwood avenue near Battle Ground Cemetery, fronting on Brightwood avenue about sixty feet, with a depth of about two hundred feet, title and transfer of license guaranteed or deposit refunded. I agree to use my best efforts to secure the signers for the transfer of said license and to give said Löffler a clear title to all of above property."

To understand more readily the applicability of the evidence

a diagram showing the shape of the lot and the location of the buildings is given below.

The principal questions on the trial arose in regard to the admission and exclusion of certain evidence by parol and upon exceptions taken to the charge.

The opinion of the Court of Appeals was delivered by the

late Mr. Justice McComas, who made a synopsis of the facts and evidence, which is herewith inserted:

"The defendant owned a parcel of land on Brightwood avenue, or Seventh street road, a half mile north of Brightwood in this District. He there kept a saloon and country tavern in a building erected on a lot triangular in shape, fronting eighty-five feet on Seventh street road. As appears in the diagram the front line and the south line of the triangle formed a rectangle, and the south line was two hundred and twenty-four feet long. The hypothenuse, or north line, was two hundred and thirty-nine and a half feet long. The improvements fronted on the Seventh street road and comprised a frame building standing fifty-one and a half feet along the road. At the northeast corner was a small lot of ground with a front of thirteen and a half feet, the house line running back at right angles nearly joined the north line, making this lot a triangle. On the south side was a driveway about twenty feet wide. At the south end of the building was a bar-room and adjoining it on the north was a serving room for guests. A hallway came next on the north and on the north side of the hall was a store room for liquors, above which on the second story was a ball room. The remaining upper rooms of the house were used as living rooms for the family of the defendant. Back of the store room on the ground floor on the north line of the premises was a kitchen, and in the rear of that on the same north line was a billiard room for guests. In the rear of these structures, and all adjoining the north line, were various stables, sheds, and out-houses.

"Beginning at the south line of this parcel of land, if one measured sixty feet northward on the front line, the end of the sixty foot line was at a point in the hall doorway near the middle thereof, and only the south forty feet of the building would be included within the sixty feet while eleven and a half feet of the north end of the building and a small triangular lot before described would be excluded. All the premises were occupied and used in their entirety by the defendant.

"From the record, it appears the defendant told Charles D. Hood, a liquor dealer, that he wished to sell his property and business for twelve thousand dollars; that he wished to get out of the neighborhood because he could not do business there and the protests made it difficult to renew his license. Hood communicated this information to the plaintiff, who sent his agent to purchase the property. This man introduced himself as a real estate agent to the defendant and asked him what he wanted for the place, and the defendant said he would take twelve thousand dollars for the property, fixtures, and everything excepting pool tables and stock. Later this agent called with the plaintiff, who came as a prospective purchaser, and the defendant with knowledge of that conducted the plaintiff over the premises, showing him over the whole building, upstairs and downstairs and into the kitchen and billiard room.

"Several days later, on April 27, 1905, after the plaintiff had sold his saloon in Georgetown, he notified the defendant that he would visit him to 'make the deal,' and the two parties and this agent met on the premises the same afternoon. The price asked by the defendant was finally agreed to and it was agreed that Mr. Richard, a wholesale liquor dealer, a friend of both parties, who had helped the plaintiff to sell his saloon and had driven out with him, should write the agreement.

"During these negotiations, the defendant did not suggest that he did not intend to sell the whole premises or that he intended to reserve any portion, but said that the stock of liquors and the pool or billiard tables were not included in the sale. Richard wrote the following paper, which was signed by the defendant and his wife.

[It is the agreement above set forth.]

"Richard testified when he had written as far as 'license—fixtures located on Brightwood avenue near Battle Ground Cemetery' he turned and asked, 'what is the size of this place,' and there followed a discussion between the two Löfflers, Harten and himself. One of the party suggested it was about sixty feet and Harten said 'that is about right,' and Richard so wrote

it. Nothing was said by Harten or by Löffler to indicate that only a portion of the premises was to be sold and it was understood that the whole of the premises was covered by the description.

"The plaintiff testified that in this discussion the defendant stated that the lot had about sixty feet front and about two hundred feet in depth; that when Richard was writing the contract 'he asked Mr. Harten how much ground was in this place. We all were guessing and Mr. Harten said put it down about sixty feet front, and about two hundred feet deep, and Mr. Richard said all right, we put it down that way.' That when the paper had been prepared, Harten called to Mrs. Harten and said to her 'I want you to sign this contract, I sold the place.' Before the contract was prepared, and while they were discussing the price, the defendant said to the plaintiff 'I will sell everything here.'

"Andrew Löffler, the agent, testified that when we came down to describe the place, Harten told him it was described in the license. Harten brought the license. The description in the license is opposite 'Battle Ground Cemetery.' Richard put that down and said we should describe the property a little plainer; he said, 'what is the square number or what is the number of the lot;' Harten said, 'there is no number to the lot;' he did not know the number of the square, so he said, 'we had better put down the number of feet you have here.' Somebody asked me what my idea was, and I said about sixty feet; I looked out of the window to size it up; Mr. Löffler made a guess, and we all made a guess. Harten said put it down about sixty feet; we estimated about sixty feet front and about two hundred feet deep.

"Peter J. May testified that he met the plaintiff and his wife at Harten's place on the day after the sale and Harten stated that Löffler had bought him out, that he had sold the whole place, everything, ground and all, and was going out of business, and this witness and Mrs. Löffler were shown through the house by Harten, who then described how she was going to fix up the

house, and Harten conducted them into many rooms, including the liquor store room and the ball room above it. Later, the plaintiff asked the defendant to indorse the license paper and sign the application for its transfer. The plaintiff or his agent or attorney frequently repeated this request. Harten always refused to sign, at one time saying he did not want family trouble. Finally, when urged by the plaintiff and his attorney and being charged with attempting to back out of his agreement, the defendant replied 'I won't sign a damn thing.'

"Subsequently the plaintiff tendered to the defendant the purchase money and a deed of the premises, and without reading it the defendant refused to sign, and immediately after offered to the agent, Löffler, a hundred dollars 'to get me out of this.' "

*Mr. Lorenzo A. Bailey* for plaintiff in error.

*Mr. Leon Tobriner,* for defendant in error, submitted.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The defendant in error objects that this court is without jurisdiction on the ground of the amount in controversy not being sufficient. Taking the pleadings, the evidence given, and the verdict of the jury, it would seem that the amount in dispute is sufficient to give this court jurisdiction. In his set-off the defendant claims the unpaid balance of the purchase price for the property agreed upon, which unpaid balance amounted to $11,750, and he claims that sum now, and he also claims that the amount of the judgment against him of $1,250 is erroneous, and that a reversal of this judgment will permit him to claim before a jury on another trial the full amount of his set-off, or at least the balance due for the purchase price. We think the court has jurisdiction. *Block* v. *Darling,* 140 U. S. 234; *Buckstaff* v. *Russell & Co.,* 151 U. S. 626.

The objection made by the defendant to the oral evidence goes to its being contradictory to or inconsistent with the written agreement. The defendant maintains that the admission of such evidence was contrary to the rule on that subject. We agree with the Court of Appeals that the evidence was properly admitted. The tendency and purpose of the whole evidence were simply to show the circumstances existing at the time when the contract in question was executed, and to identify the premises, and to give point and meaning to the word "about" as contained in the contract. "About" is a relative and frequently ambiguous term, and its precise meaning is affected by circumstances existing when the word is used in a contract, and known to and recognized by the parties. The evidence was not inconsistent with, nor did it contradict, the written contract, but when a diagram of the premises is shown it plainly appears that the word "about," with reference to the width of the premises on Brightwood avenue, left an ambiguity in the contract which it was perfectly proper to explain by oral evidence. The oral evidence identified the premises and gave point and certainty to the meaning of the word. In *Lowber* v. *Bangs*, 2 Wall. 728, 737, it was said that contracts where their meaning is not clear are to be construed in the light of the circumstances surrounding the parties when they were made, and the practical interpretation which they by their conduct have given to the provisions in controversy. Taking these existing circumstances and that interpretation into consideration, it is seen that the identification of the premises is made clear by the oral evidence, and it is also plain that the word "about" must extend the sixty-feet limit to the north end of the premises. It never could have been the idea of either party that the building should be cut in two, and certainly no language was used which set forth such unusual meaning. Cases are almost innumerable upon the subject of oral evidence in connection with written instruments, but we are satisfied the rule was not infringed by the introduction of such evidence in this case. The opinion of the Court of Ap-

peals is satisfactory and nothing more need be added upon the subject.

Fault is found with the admission of evidence in regard to the measure of damages. The rule was correctly stated by the trial court to be the difference between the purchase price and the market value at the time of the contract of sale. In the opinion of the Court of Appeals it was stated that as the contract of purchase intended not only the real estate, but also the benefit of the license, the business and the good will, it was proper to give evidence of the value of each of them, and this was the purpose of certain evidence, which was properly admitted.

The exclusion of the evidence of the witness Montague when called by the defendant with reference to the value of the property was not error, because there was absolutely no evidence whatever to support the hypothesis stated in the question. The question assumed as a fact that the business amounted to $150 or $200 a week, and that the realty was worth only $4,000 with the improvements, the land and buildings on it, and then the question was put, "What would be a fair price to pay for that land with the improvements and fixtures, and the liquor license and good will of the business, but not including any of the stock in trade?" The question assumed the value of the greater portion of the property sold.

We have carefully looked through the record and find that the other exceptions taken by the plaintiff in error upon the trial are plainly unimportant and immaterial.

The judgment must be

*Affirmed.*