## W. T. TILDEN COMPANY *vs.* DENSTEN HAIR COMPANY.

Essex.    November 7, 1913. — January 9, 1914.

Present: RUGG, C. J., LORING, BRALEY & DE COURCY, JJ.

*Equity Pleading and Practice,* Master.   *Contract,* Construction, Performance and breach.   *Equity Jurisdiction,* Specific performance.   *Evidence,* Presumptions and burden of proof.

If a master, to whom has been referred a suit in equity for the specific performance of a contract, states in his report, after findings as to specific facts with regard to the interpretation and performance of the contract by the parties, a general finding that the defendant has violated the contract, an exception to such general finding on the ground that it is beyond the authority of the master must be overruled.

In a suit in equity against a manufacturer of washed animal hair for the specific performance of a contract by which the defendant was to sell to the plaintiff for a year his "entire production of washed brown calf hair, standard as has been agreed between us," it appeared that during the previous year the parties had been performing a similar contract, in which the standard was not more clearly defined.   The words "calf hair" had a recognized meaning in the hair trade, and designated the hair from the youngest cattle, hair of older young cattle being called "kip" hair, which sometimes was included in the designation, "colt" hair.   The difference between calf hair and the grade of colt hair called kip hair was so slight that competent experts of equal ability might honestly have differed in regard to it.   In the previous transactions between the parties the plaintiff had left the determination of the question, what of the defendant's product was calf's hair, entirely to the defendant's experts, who had acted honestly.   During the preceding year the defendant had sold as colt hair to others than the plaintiff some of the questionable grade of hair.   A master to whom the case was referred reported that he was unable to find, on the evidence before him, that under the contract in suit the defendant had failed to deliver to the plaintiff the same proportion of the questionable grade of hair as had been delivered during the previous year.   The plaintiff contended that all hair of that grade was included in the contract in suit.   *Held,* that the contract in suit called only for a delivery from the defendant's entire product of the same proportion of the questionable grade as was delivered in the preceding year, and that, therefore, on the master's finding, there was no breach of the contract shown, and the bill must be dismissed.

BILL IN EQUITY, filed in the Supreme Judicial Court on April 17, 1913, seeking to enforce the specific performance of a contract, made on November 13, 1912, whereby the defendant was to sell to the plaintiff its "entire production of washed brown calf hair, standard as has been agreed between us," for the year beginning

January 1, 1913, at a certain price, "all other terms and conditions same as contract now in force."

The suit was referred to Fred T. Field, Esquire, as master. In his report the master made the following findings, among others:

The words "contract now in force," as used in the contract in suit, meant a contract made, on January 16, 1912, whereby the plaintiff bought and the defendant sold "all the washed brown calf hair you" (the defendant) "have on hand now, and produce to December 31st, 1912." This contract also contained the following provision: "It is understood that the hair will be cleanly washed and separated into whatever grades we [the plaintiff] may desire, and each grade held until there is a carload."

The words "calf hair" have a recognized meaning in the hair trade and were used with that meaning in the contract in suit. In this meaning of the words calf hair is hair from the skins of calves, that is, from the skins of young animals of the cattle kind, but the term "calf hair" is not applied to kip hair. Kip hair is hair from kip skins, that is, from the skins of animals of the cattle kind, which, though young, are older than calves. The line of division is drawn approximately at the time when the young animal begins to eat solid food. Kip hair is also known as colt hair, though the term "colt hair" is also applied to hair from the skins of young animals of the horse kind. The grade of colt hair which is also called kip hair differs from calf hair in that it is longer, finer and more inclined to be curly. The difference between the grade of colt hair which is also called kip hair and calf hair is so slight that competent experts of equal ability often would disagree as to whether a quantity of hair, either large or small, should be classified as colt hair or calf hair.

The grading or classifying of hair of the kinds dealt in by the defendant, including the kind called for by the contract in suit, can be done suitably only by persons of long experience, and there is frequent disagreement among competent experts as to the grade or class to which a given quantity of hair belongs. In the defendant's factory the hair, including that called for by the contract for the year 1913 and that called for by the contract for the year 1912, after being washed was graded or classified by the defendant, and the plaintiff acquiesced in allowing the defendant to do such grading or classifying. There was no evidence that the plaintiff

ever had attempted to undertake such grading or classifying itself. The defendant employed competent experts to do such grading or classifying.

"11. I find that the standard agreed upon" in the contract in suit "was the washed brown calf hair delivered to the plaintiff by the defendant during the year 1912 under the contract for that year. . . . I find that under the contract for the year 1912 . . . the defendant delivered to the plaintiff some hair which a competent expert might reasonably classify as colt hair."

Between January 1 and April 17, 1913, the defendant sold to James G. Kitchen and Company three carloads of its own production of washed brown hair, billing it as "colt hair." "This hair was in the ordinary course of business classified by the defendant as colt hair, and upon the evidence I am unable to find that there was any fraud or bad faith on the part of the defendant in so classifying it. I find, however, that a competent expert might reasonably have classified it either as colt hair or as calf hair. I find that, taking as the standard the deliveries by the defendant to the plaintiff during the year 1912 under the contract for that year, . . . this hair was washed brown calf hair, and was, therefore, washed brown calf hair of the standard agreed upon" in the contract in suit.

The sixteenth paragraph of the master's report was in substance as follows: "Upon the facts above found I find that the sale of three carloads of hair to James G. Kitchen and Company by the defendant . . . was in violation of the contract" in suit.

The parties also dealt with each other under similar contracts during the years 1909 and 1911.

The defendant excepted to the sixteenth paragraph of the report on the ground that the master's authority was limited to an investigation and report of the facts in controversy between the parties and that that paragraph was in excess of his authority.

The case was heard upon the exception by *Loring*, J., who filed the following memorandum:

"As I construe the master's report it is in effect this: Inasmuch as the defendant in 1912 made a delivery to the plaintiff of some hair belonging to the questionable grade, it (the defendant) is bound in 1913 to deliver to the plaintiff all the hair of the questionable grade produced by the defendant in that year. By hair

of the questionable grade I mean hair which a competent expert might reasonably classify as colt hair and another competent expert might reasonably classify as calf hair.

"As I construe the report, the master reached this conclusion without regard to the insignificance of the amount of questionable hair delivered in 1912, and without regard to the reason for that delivery, for example, without regard to its having been made by mistake.

"In my opinion the proper construction of the agreement is this: In 1913 the plaintiff was entitled to receive as great a percentage of hair of the questionable grade as it received in 1912. That is to say: If of the hair received by the plaintiff in 1912 ten per cent was hair of the questionable grade, it is entitled in 1913 to deliveries ten per cent of which consists of hair of the questionable grade."

An interlocutory decree accordingly was made, overruling the defendant's exception to the report and recommitting the report to the master "to report more fully whether, taking the actual deliveries of 1912 as the standard, the defendant has failed to deliver to the plaintiff its entire production of washed brown calf's hair."

The master, after a further hearing, filed a supplemental report containing findings in substance that, out of twenty-five and one half carloads of hair shipped by the defendant to the plaintiff in 1912 as calf hair produced by the defendant, six at least were carloads "which a competent expert might reasonably have classified as colt hair but which were reasonably and intentionally classified by the defendant acting by competent experts as calf hair and were intentionally shipped by the defendant to the plaintiff under the contract;" that during the same year the defendant sold to James G. Kitchen and Company a little more than four and a half carloads of the hair produced by it "which a competent expert might reasonably have classified as either colt hair or calf hair, and which the defendant classified as colt hair. . . . Upon the evidence I am unable to find how much of such hair was produced by the defendant in the year 1912, and I am therefore unable to find that in that year the defendant shipped to the plaintiff all the hair of its production which a competent expert might reasonably have classified as either colt hair or calf hair.

"I find that from January 1, 1913, until the filing of the bill of complaint the defendant under the contract for the year 1913 . . . shipped to the plaintiff three carloads of hair produced by the defendant classified as calf hair. I find that among these three carloads of hair was hair which a competent expert might reasonably have classified either as colt hair or as calf hair as those words are used in the hair trade but without regard to any standard agreed upon between the plaintiff and the defendant. Upon the evidence, however, I am unable to find how large a proportion of the three carloads of hair was of this questionable grade, that is, hair which a competent expert might reasonably have classified as either colt hair or calf hair."

The report closes as follows: "Upon the evidence before me, construing the words 'entire production of washed brown calf hair' used in the contract for the year 1913 as including the same percentage of hair of the questionable grade above referred to as was delivered by the defendant to the plaintiff during the year 1912 under the contract for that year, but not necessarily including all the hair of this questionable grade produced by the defendant, I am unable to find that from January 1, 1913, to the filing of the bill of complaint, 'taking the actual deliveries of 1912 as a standard, the defendant has failed to deliver to the plaintiff its entire production of washed brown calf's hair.'"

The case was reserved by *Loring,* J., for determination by the full court.

*J. C. Bassett,* for the plaintiff.

*J. M. Hallowell,* for the defendant.

BRALEY, J. The defendant excepted to the master's report because of his general conclusion from facts previously found, that it had violated the contract. But the exceptions are not well founded. It was still a question of fact even if deducible from other facts which could be properly treated as evidence on the principal issue, whether the defendant had failed in performance. *Jones* v. *Keen,* 115 Mass. 170, 181. *Perry* v. *Pye,* 215 Mass. 403.

No exceptions having been saved by the plaintiff, the question for decision is whether upon the report and supplemental report the bill can be maintained.

The plaintiff asked specific performance of a contract for the

delivery during the term of one year, of the defendant's entire production of "washed brown calf hair" of a standard or quality alleged in the bill to be defined in the letter written by the plaintiff, and accepted by the defendant. But the letter fails to state the standard. The only reference to the grade of hair is found in the words "standard as has been agreed between us," and under the general phrase "all other terms and conditions same as contract now in force," all undefined terms required to complete the contract as understood by the parties are included. *Hebb* v. *Welsh*, 185 Mass. 335. It appears from the report that the contract for the preceding year, which by reference forms part of the contract in suit, covered "washed brown calf hair," to be "separated into whatever grades" the plaintiff desired, and to ascertain the grades parol evidence became admissible. *Lipsky* v. *Heller*, 199 Mass. 310. *Graves* v. *Broughton*, 185 Mass. 174. The master accordingly found on the evidence before him, that the words "calf hair" have a well defined trade meaning, and having been so employed by the parties the general trade usage formed part of the agreement. *Barrie* v. *Quinby*, 206 Mass. 259, 264, 265. The defendant is shown by the report to have been engaged in the production of washed animal hair. It took the hair not only of calves, but of other cattle, as well as of colts as it came from the hide, and by cleansing and assorting prepared the hair for the market. The difference in the finished product between calf hair and the other varieties is found to have been so slight, that competent experts differed as to the proper classification. The general conclusion, that the defendant is willing and able to tender full performance, forces the plaintiff to rely upon a sale by the defendant of three carloads of hair to other parties, as being sufficient to show a violation of the contract. But the master also finds, that this sale consisted of hair within the questionable or uncertain grade, and that the defendant has acted in good faith. The whole tenor of the report also shows, that the true construction of the contract when read in the light of the circumstances, as a whole is doubtful. Where this appears, there is no better guide than the contemporaneous interpretation of the parties. The finding is explicit, that under all the contracts referred to in the report, the plaintiff never has undertaken the classification, but with its full acquiescence the defendant through competent experts has graded the

hair called for, and in the absence of any evidence of a failure of the defendant's employees to exercise their honest judgment, the mode adopted by the parties is entitled to great weight if indeed it is not controlling. *Cambridge* v. *Lexington,* 17 Pick. 222, 230. *Mitchell* v. *Wedderburn,* 68 Md. 139, 145. *Helme* v. *Strater,* 7 Dick. 591, 603. *Topliff* v. *Topliff,* 122 U. S. 121.

But, even if the plaintiff is not thereby estopped from relying on a construction which requires the defendant to deliver as brown calf hair all hair which competent experts might determine as being within the questionable grades, it is entitled only to the proportion of such hair measured by the standard of delivery adopted under the prior contract. The words, "standard as has been agreed between us" speak only of the past. What that standard was, depended in the absence of specific definition in the contract itself, upon the character and quality of deliveries under the preceding contract, to which no objection has been made by either party. The ruling of the single justice was right. The order of recommittal, as shown by the decree, was for the purpose only of ascertaining upon this reasonable and just basis the percentage which the plaintiff properly might claim. It had the burden of proof, and having failed as appears from the supplemental report to satisfy the master that taking the actual deliveries of the previous year as the standard, the defendant had failed to deliver the plaintiff's proportion of hair within the debatable class, there is no ground upon which relief can be granted or damages assessed. *Sarkisian* v. *Teele,* 201 Mass. 596.

The interlocutory decree overruling the exceptions is affirmed, and a decree is to be entered confirming the reports and dismissing the bill with costs.

*Ordered accordingly.*