12244

McGREGOR v. HURST

(138 S. E., 865)

1. SALES—TERMS OF CONTRACT TO BUY COTTON HELD FOR JURY, UNDER EVIDENCE.—In action for damages from breach of contract to buy cotton, evidence *held* to require submission of issue as to terms of contract to jury.

2. CONTRACTS—IF CONTRACT IS DOUBTFUL, COURT MAY LOOK INTO CONSTRUCTION PLACED ON IT BY PARTIES THEMSELVES.—It is a familiar canon of construction that, if contract is doubtful in meaning, the Court may look into the construction which the parties themselves have placed on it, to reach the true intention, which is the object of all judicial interpretation.

Before MEMMINGER, J., Chesterfield, April, 1924. Reversed.

Action by J. S. McGregor against J. T. Hurst. Judgment for plaintiff, and defendant appeals.

*Messrs. M. J. Hughes, George K. Laney* and *Mendel L. Smith,* for appellant, cite: *Construction of contract:* 212 U. S., 397; 35 L. Ed., 538; 186 Fed., 700; 195 Fed., 669; 67 So., 424; 157 Ill. Ap., 16; 103 N. E., 916; 34 L. R. A. (N. S.), 196; 54 S. C., 582; 81 S. C., 12; 100 S. C., 1; 105 S. C., 107. *Where two clauses of an agreement are repugnant and cannot stand together, the first must be recognized and the second rejected:* 143 Fed., 750; 224 Fed., 74; Ann. Cas., 1913-C, 221; 186 Mass., 217; 64 S. E., 200; 72 Atl., 240; 76 S. C., 297; 102 S. C., 227. *Primary object in the construction of contracts:* 24 L. R. A. (N. S.), 1090; 61 S. E., 185; 23 L. R. A. (N. S.), 223; 84 S. C., 148; 102 S. C., 240; 126 S. C., 356; 234 Ill., 90; 180 Mich., 138; 227 Pa., 245; 233 U. S., 273; 58 L. Ed., 957; 209 Fed., 758; Ann. Cas., 1915-A, 601; 215 Mass., 212; 42 S. C., 342; 104 S. C., 378; 109 S. C., 112; 167 N. C., 271; 139 Va., 91; 93 S. C., 537; 17 Wall., 657; 21 L. Ed., 745; 26 S. C., 258; 39 S. C., 383; 92 S. C., 95; 103 S. C., 494; 113 S. C., 352; 114 S. C., 32; 125 S. C., 320; 126 S. C., 356;

128 S. C., 247; 8 S. C. L., 308; 14 S. C. L., 121; 23 S. C. L., 139; 44 S. C., 227; 46 S. C., 220; 53 S. C., 306; 77 S. C., 92.

*Messrs. Prince & Nock,* for respondent, cite: *Construciton of contracts:* 44 L. R. A., 297; 6 R. C. L., 837, 841, 853; 9 Cyc., 587; 92 S. E., 695; 122 S. C., 326; 125 S. E., 328; 2 L. R. A. Dig., 2274; 173 Fed., 857; 24 S. C., 280. *Acts of the parties, not the understanding of either of them, are to be looked at:* 51 S. E., 159; 9 Cyc., 588. *Usage and custom:* 27 R. C. L., 154, 167, 173; Id., 189; 129 S. C., 53. *Latent ambiguities are for jury, patent for the Court:* 1 C. J., 414; 13 C. J., 785; 99 Atl., 875; 17 S. C., 477; 15 S. C., 296; 3 S. C., 253; 22 S. E., 527; 207 Pac., 527; 125 S. C., 328–331.

August 3, 1927.

The opinion of the Court was delivered by Mr. Chief Justice Watts.

The appellant thus states the case:

"This action was commenced on the 12th day of March, 1921, to recover the sum of $3,244.26, with interest thereon at the lawful rate, from the 25th day of October, 1920, as damages resulting to the respondent from the failure of the appellant to accept upon tender 42 bales of long staple cotton, in alleged breach of a contract of sale thereof; the said amount representing the difference between the contract price and the amount realized thereon in the open market after the alleged breach of the said contract. The defense of the appellant was that the cotton in question was rejected on account of its failure to meet the requirements in grade and staple of the contract between the parties.

"A brief reference to the setting of this controversy may facilitate a better understanding of the issues involved, and may be thus substantially stated:

"On the 6th day of April, 1920, appellant, engaged in business at Chesterfield, S. C., entered into a contract with

the firm of McColl & Co., cotton dealers of Bennettsville, S. C., whereby he sold and agreed to deliver to the latter on the platform of the Chesterfield & Lancaster Railroad Company at Chesterfield, between the 1st day of September, and the 25th day of October, 1920, 100 square bales of lint cotton, aggregating in weight 50,000 pounds, at a stipulated grade of 'strict middling,' 'full 1¼ inch' staple and price of 60 cents per pound, said cotton to be graded in accordance with the United States government classification of cotton, and in the event of any disagreement between the parties as to grade or class of any of the said bales of cotton such differences were to be submitted to the New England Cotton Buyers' Association of Boston, Mass., whose decision should be final.

"In the early part of October, 1920, the appellant, being somewhat apprehensive that he would experience some difficulty in securing the 100 bales to be delivered by him to McColl & Co. under their contract, purchased from the respondent, after some negotiation, 50 bales of lint cotton, under a verbal contract to be delivered to him on the 20th day of October, 1920, which time was subsequently extended 5 days, at the price of 45 cents per pound. This cotton was admittedly bought by the appellant to be applied by him on the contract between him and McColl & Co. The respondent in turn purchased the 50 bales of cotton which were to be delivered under his contract with appellant from the firm of Coker & Co., of Hartsville, S. C.

"On the 20th day of October, 1920, the respondent presented on the platform of the Chesterfield & Lancaster Railroad Company, at Ruby, S. C., 12 bales to be inspected and graded, which were sampled by D. K. McColl, who represented for this purpose the firm of McColl & Co., of which he was a member, and rejected as not being up to proper grade. Five days later, at the same place, the appellant, D. K. McColl, and one or two others who were to assist in the sampling, made another effort to sample this cotton.

The respondent was not personally present at this time, but was represented by an agent.

"Differences arose between the parties in the course of the process of grading, which rendered the effort fruitless, with the result that samples of the 50 bales were forwarded by McColl & Co., to the New England Cotton Buyers' Association, of Boston, Mass., for their determination of grade and staple upon a type agreed upon by McColl and appellant as strictly in conformity with their written contract. This type was designated as 'McColl's elipe type,' and 'full 1¼ inch' in staple. Forty-seven bales failed to meet the requirements of the type submitted and contemplated in the written contract between appellant and McColl & Co., and were rejected. The remaining 3 bales were accepted and paid for as they came up to the submitted standard. The respondent refused to participate in any way in this effort at classification.

"Shortly thereafter, however, the respondent, through the firm of Coker & Co., forwarded samples from 50 bales, which he testified were the same as those from which samples had been taken by appellant, to the New England Cotton Buyers' Association of Boston, to be determined upon a type selected by him, and designated as a government type '1¼ inch,' *not* 'full 1¼ inch,' as set out specifically in the Hurst-McColl & Co. written contract. In this effort at classification, neither the appellant nor McColl & Co. had any part whatever. The report on this grading was that 42 bales passed. This cotton was afterwards tendered to appellant by the respondent and refused.

"This action was thereafter brought, as already stated, to recover as damages the difference between the contract price and lower price obtained on the open market in a sale of the cotton subsequent to appellant's refusal to accept it under his contract, with interest from the date thereof. The cause was tried at the April, 1924, term of the Court, before Hon. R. W. Memminger, presiding Judge, and a jury. At the

close of the testimony by both sides, the respondent moved for a directed verdict in his favor, upon the ground that, under the *undisputed* testimony adduced, he had submitted his cotton to an agreed arbitrator, whose decision was final, the cotton in question to be determined by a *type* provided for in the contract between him and appellant; that this cotton met the requirements of grade and staple; that he had otherwise complied with all of the conditions of his contract, and the appellant had failed to comply with the conditions imposed upon him thereunder. The motion for a directed verdict was granted by the presiding Judge, who assigned at some length his reasons therefor. The appeal is from this order, upon exceptions which present, in the main, the questions stated on the first page of this brief."

The appellant by 11 exceptions challenges the correctness of his Honor's action in directing a verdict for the plaintiff. We will not consider these exceptions *seriatim:*

1 The undisputed evidence shows that the contract between the parties as to the delivery of the cotton was verbal, and the testimony was sharply conflicting between the parties as to which type was adopted. The testimony was conflicting whether the parties had embodied in the verbal contract the "McColl standard" which is designated as a "full 1¼ inch" staple, or the alleged "government standard" of a "1¼ inch" staple, as the basis of classification or arbitration, if the parties were bound to the latter as set out in the Hurst-McColl & Co. written contract. There is no doubt that there was a conflict of testimony as to what standard of cotton was contracted for, to be delivered, there being testimony in the case conflicting that there was a difference well recognized in the cotton trade in staple and price on the market between these standards.

2 Upon the whole case, there being a serious conflict of the evidence as to what the contract between the parties actually was, his Honor was in error in directing the verdict, and should have left it to the jury for their

determination. It is a familiar principle or canon of construc-
tion, in this as well as all other jurisdictions in this country,
that, if a contract is doubtful in meaning; the Court may
look to that construction which the parties themselves have
placed upon it, to reach the true intention, which is the object
of all judicial interpretation. *Harten v. Loffler,* 212 U. S.,
397; 29 S. Ct., 351; 53 L. Ed., 568. *Lilly Company v. Brent,*
186 F., 700; 108 C. C. A., 518. *Trust Company v. Koehler,*
195 F., 669; 115 C. C. A., 475. *Waterworks Company v.
Windham,* 190 Ala., 634; 67 So., 424. *Thomas v. Turner,*
157 Ill. App., 16. *Tilden Company v. Dentsen Hair Co.,*
216 Mass., 323; 103 N. E., 916. *State v. Spring Company,*
56 Wash., 176; 105 P., 243; 34 L. R. A. (N. S.), 196.
*Williamson v. Eastern Building & Loan Assn.,* 54 S. C.,
582; 32 S. E., 765; 71 Am. St. Rep., 822. *Machinery Com-
pany v. Johnson,* 81 S. C., 12; 61 S. E., 1027. *Herndon v.
Wardlaw,* 100 S. C., 1; 84 S. E., 112. *Fass v. Insurance
Company,* 105 S. C., 107; 89 S. E., 558.

The exceptions must be sustained, and a new trial granted.

Reversed.

MESSRS. JUSTICES BLEASE and STABLER concur.

MR. JUSTICE COTHRAN (dissenting) : I think that his
Honor, Judge Memminger, rightly directed a verdict for
the plaintiff in this case. The uncontradicted evidence
shows that McGregor sold to Hurst 50 bales of cotton, to
be delivered in conformity with the contract entered into be-
tween Hurst and McColl & Co., at a given price, much less
than the price at which Hurst sold to McColl. In other
words, the parties adopted the terms of the *written* contract
between Hurst and McColl as the basis of the *verbal* contract
between themselves. That written contract, therefore, is
the measure of their respective rights and liabilities. It
calls for a certain grade and staple to be determined—
"according to the United States Government classification
of cotton, and in any case, should McColl & Co. or J. T.

Hurst disagree as to the *grade or class,*  *  *  * such difference shall be submitted to the  *  *  * association,  *  *  * and both shall abide by their decision."

The government provides types of both grade and staple, and the classification referred to includes both, as shown by the reference to differences between the parties as to *grade or class.*

It appears that, after the parties interested, including McColl & Co., who were to receive the cotton tendered by McGregor under his contract with Hurst, had disagreed as to the grade of the cotton tendered by McGregor to Hurst, McColl & Co. and Hurst, without the co-operation of McGregor, submitted samples of the 50 bales to the association for settlement, and with them transmitted a private type supplied by McColl & Co., of what they claimed to be the staple required by the contract. The report was unfavorable, only 3 of the 50 bales coming up to the private type of staple. Later new samples were taken of the 50 bales by McGregor and Coker and submitted to the association for settlement, and with them was submitted a government type of the staple required by the contract. The report approved 39 of the 47 bales submitted. It is for the refusal of the defendant to accept these 39 bales that the action was instituted.

I have little patience for the efforts of a buyer to escape compliance with his contract after the market has gone against him. I do not censure the defendant, for his action was induced by the refusal of McColl & Co. to accept the cotton on their contract with him, based upon a contention, untenable I think, that it did not come up in staple to the private type which they submitted to the association. There is nothing in the contract which justified them in applying any other yardstick than that provided in the contract.

Mr. Acting Associate Justice Purdy concurs in the dissent.