## MARTINEZ *v.* INTERNATIONAL BANKING CORPORATION.

## SAME *v.* SAME.

### APPEALS FROM THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

Nos. 79, 80. Argued March 3, 6, 1911.—Decided April 3, 1911.

The value of the matter in dispute in this court is the test of jurisdiction. *Hilton* v. *Dickinson*, 108 U. S. 165.

Where the only question is the amount of indebtedness, which the security was sold to satisfy, that is the measure of the amount in controversy, and the counterclaim for return of the property sold cannot be added to the amount of the debt to determine the amount in controversy and give this court jurisdiction. *Harten* v. *Löffler*, 212 U. S. 397, distinguished.

The mere fact that suits are tried together for convenience does not amount to a consolidation, and where the understanding of the trial judge was that there was no consolidation this court will not unite the actions so that the aggregate amount will give jurisdiction.

A judgment of the intermediate appellate court reversing and remanding with instructions to enter judgment for plaintiff in accordance with its decision without fixing a definite amount is not such a final judgment as will give jurisdiction to this court.

THE facts are stated in the opinion.

*Mr. Howard Thayer Kingsbury* and *Mr. Frederic R. Coudert,* with whom *Mr. Paul Fuller* was on the brief, for appellant:

This court has jurisdiction of both appeals, with power to review the facts as well as the law.

Where the court below has rendered a judgment in favor of plaintiff for less than the jurisdictional amount and has also dismissed a counterclaim interposed by the defendant, who seeks to review the judgment, the amount of the judgment, and the amount sued for in the counterclaim, are in dispute and if the two together make up the requisite amount, this court has jurisdiction. See *Harten* v. *Löffler,* 212 U. S. 397; *Buckstaff* v. *Russell,* 151 U. S. 626; *Block* v. *Darling,* 140 U. S. 234; *Lovell* v. *Cragin,* 136 U. S. 130; *Dushane* v. *Benedict,* 120 U. S. 630. So in case of cross appeals, *Walsh* v. *Mayer,* 111 U. S. 31.

The decree in No. 79 is substantially one of foreclosure and sale. Such a decree has been expressly held by this court to be final. *Whiting* v. *United States Bank,* 13 Pet. 6, 15. Nothing remained for the court below to do except to carry out the judgment. The direction to sell the Germana, if the judgment was not otherwise paid, was absolute, and the sale would not even require confirmation by the court.

In No. 80 the judgment appealed from settled the whole law of the case and fixed the rights of the parties, leaving nothing for the court below to do except of a ministerial character. The dispositive portion of the judgment was an absolute direction for the specific performance of the agreement sued on, by the execution of an instrument in the form specified by the court. *Thomson* v. *Dean,* 7 Wall. 342; *Forgay* v. *Conrad,* 6 How. 201; *French* v. *Shoemaker,* 12 Wall. 86, 98; *Hill* v. *Chicago & Evanston R. R. Co.,* 140 U. S. 52; see 32 Stat. 695, quoted in *De la Rama* v. *De la Rama,* 201 U. S. 305.

*Mr. Henry E. Davis* for appellee.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

These are two suits commenced in the Court of First Instance of the city of Manila on the same day, February 25, 1905, and numbered in that court as cases Nos. 3363 and 3365, respectively. In each suit the International Banking Corporation was plaintiff and Francisco Martinez and another person as the guardian of Martinez were defendants. After the present appeals were taken Martinez died and his administrator has been substituted in his stead.

We shall separately summarize the proceedings below in the two cases to the extent it is necessary to do so to understand the proper disposition to be made of the appeals.

Case No. 79 was a suit of an equitable nature brought by the bank against Martinez to foreclose a mortgage upon the steamer Germana, sell the steamer, and collect an alleged debt of 30,000 pesos, claimed to be secured thereby. By the answer and cross bill it was asserted that at the time of executing the mortgage Martinez was mentally incapacitated, and hence legally incompetent; that the whole transaction was void for fraud, duress and conspiracy; that the alleged indebtedness was a part of the subject-matter of the instrument sued on in the other case, the effect of which instrument was to supersede the mortgage sued on in this, and that plaintiff had wrongfully taken and held possession of the steamer and refused to account for its profits. As affirmative relief the setting aside of the whole transaction was demanded, as also the return of the steamer and an accounting of its profits.

The Court of First Instance in substance sustained these defenses, dismissed the plaintiff's suit, and directed a return of the steamer.

It was recited in the judgment: "This case was tried together with case No. 3365, it being agreed that the evidence taken on the trial pertinent to either or both cases should be considered by the court in the respective cases." On appeal the Supreme Court of the Philippine Islands reversed this judgment, held that the transaction was valid, and entered the following judgment:

"It is ordered that the judgment appealed from the Court of First Instance of the city of Manila, dated March 29, 1906, be, and the same is hereby reversed, and the record remanded to the court from which it came, with directions to that court to enter judgment in favor of the plaintiff, and against the defendants, Francisco Martinez and his guardian, Vicente Ilustre, for the sum of P 28,599.13, and interest at the rate of eight per cent per annum from the first day of January, 1904, with costs, and that the steamship 'Germana,' if said judgment is not paid, be sold in accordance with law to pay and satisfy the amount of said judgment. No costs will be allowed to either party in this court."

Case No. 80.—This case was brought to recover a judgment for 159,607.81 pesos with interest, and in default of payment for the foreclosure of an instrument alleged to be a mortgage, the sale of certain real estate described in the mortgage, execution in the event of a deficiency, and for general relief. By answer and cross bill the same general defenses were set up as in the other suit. It was further averred that the alleged considerations for the instrument sued on was "padded and fictitious," contained duplications of the same item, and included the item of 30,000 pesos which was the subject of the other case; also that the instrument sued on was not in law a mortgage, but was an agreement for the transfer of property with right of repurchase (*pacto de retro*), and that the defendant had never refused to perform such contract, but that the plaintiff had failed to perform its own obligations there-

under; also that the plaintiff had wrongfully taken posses-
sion of the property in question and received its rents and
profits. The defendant demanded that the entire trans-
action be set aside; that plaintiff's suit be dismissed, and
that plaintiff account for the rents and profits it had
received.

The Court of First Instance found against the plaintiff
and rendered judgment in favor of the defendant guardian
for the gross amount of the rents adjudged to have been
unlawfully collected by the plaintiff. The case was ap-
pealed to the Supreme Court of the Philippine Islands,
and was there docketed as case No. 3472. The appellate
court held "that the evidence is not sufficient to establish
any of the defenses or counterclaims," and "that the de-
fendant, Martinez, at the time the action was com-
menced, was indebted to the plaintiff in at least the sum
of P 159,607.81 was fully established by the evidence."
The court, however, decided that the instrument claimed
to be a mortgage was not such, but was "a promise to sell
real estate upon certain terms, and contemplates a subse-
quent contract of sale which should contain the terms
stated in this document," and that sufficient facts were
stated in the complaint "to constitute a good cause of
action for the specific performance of the contract."
After referring to the fact that plaintiff had been in posses-
sion of certain of the real property described in the com-
plaint and collected rentals therefrom, the court con-
cluded its opinion as follows:

"The net amount collected should be applied in reduc-
tion of the sum of 159,607.81 pesos, which according to the
evidence the defendants owe to the plaintiff. When the
case is remanded, the defendants should have an oppor-
tunity to question the expenses claimed to have been met
by the plaintiff in connection with its possession of these
buildings, which it has deducted from the gross amount
received.

"After a consideration of the whole case, we hold that the plaintiff is entitled to a judgment in the court below, with costs, declaring that Francisco Martinez is justly indebted to it in the sum of 159,607.81 pesos, less such sum as that court may decide should be credited to Martinez for the net receipts from the real estate in question in this case, with interest on the balance from February 25th, 1905, at eight per cent per annum; and ordering that Francisco Martinez and Vicente Ilustre, as guardian of Francisco Martinez, execute and deliver to the plaintiff, within a time to be fixed by the court, such a contract as is contemplated by the contract of June 15th, 1903, which should be substantially in the form of the instrument above referred to of date of February 12th, 1904, omitting therefrom, however, the steamer 'Germana.' The judgment should contain a provision that whatever may be realized from the sale of the 'Germana' under the judgment in case No. 3471 shall be considered as a partial payment when realized upon the amount due in this action.

"The judgment of the court below is reversed, and the case is remanded with instructions to that court to enter judgment for the plaintiff in accordance with the views hereinbefore expressed. No costs will be allowed to either party in this court."

The following judgment was subsequently entered:

"It is hereby ordered that the judgment of the Court of First Instance of the city of Manila, appealed from and dated March 29, 1906, be reversed and the case remanded to the court from which it came with directions to the judge to enter judgment in favor of the plaintiff in accordance with the decision of this court, without special provision as to the costs of this appeal."

The present separate appeals from the aforementioned judgments of the Supreme Court of the Philippine Islands were then taken. The petition for the allowance of the appeal in the first case (No. 79 here; No. 3471 in the Su-

preme Court of the Philippine Islands) expressly recited that the amount in controversy therein "is 30,000 pesos, equivalent to $15,000 U. S. currency." It was, however, asserted that the cause was "an incident and part of the same transaction and controversy involved in cause No. 3472," and that the two cases "were . . . consolidated and tried together in the Court of First Instance." The appeal was allowed by one of the associate justices of the Supreme Court of the Philippine Islands. In doing so he declared "that . . . there was not a strict consolidation of the two cases . . . between the same parties by virtue of an express order of the court and in accordance with the procedural law, and . . . the amount in litigation in the first of the said cases does not exceed $15,000 United States currency." However, substantially upon the ground of the "connection and intimate relation" between the cases "the doubt produced by reasons advanced as to whether or not the appeal interposed in case No. 3471 is admissible, notwithstanding the fact that the amount involved does not reach the sum of $25,000 United States currency" was left to be determined by this court. The appeal in the second case was allowed by the same justice, it being recited that it appeared "that the amount involved exceeds $25,000 United States currency."

In the argument at bar counsel for appellee moved that the two appeals be dismissed for want of jurisdiction in this court. We, therefore, first proceed to consider this question.

The claim of want of jurisdiction in No. 79 is based upon the contention that the questions presented in the case could only be reviewed provided the value of the matter in controversy exceeds $25,000 — (§ 10, ch. 1369, act July 1, 1902, 32 Stat. 691, 695) — and that the value is less than that sum. We are of opinion that the objection is well taken. True, it is contended for the appellant that the

amount awarded to the plaintiff by the Supreme Court of the Philippine Islands was 28,599.13 pesos and interest, and that the defendants' counter-claim for the vessel and the receipts from the use of the same amounted to 38,000.00 pesos, and that the two amounts should be aggregated in determining the value of the matter in controversy. The case of *Harten* v. *Löffler*, 212 U. S. 397, is cited as authority. But conceding that cases may arise where the amount of a judgment in favor of a plaintiff may be combined with the sum demanded in a dismissed counter-claim of a defendant to determine whether the jurisdictional value exists, manifestly this is not a case for the application of the doctrine. The value of the matter in dispute in this court is the test of our jurisdiction. *Hilton* v. *Dickinson*, 108 U. S. 165. What, therefore, is that matter is the question to be considered. Plainly, it is whether Martinez was indebted to the bank, as adjudged below, since if the indebtedness existed the amount thereof is the extent of the loss which the estate of Martinez can sustain, because, irrespective of what might be the proceeds of sale of the vessel or of other property of the estate of Martinez, if realized upon, no more of such proceeds could be taken than would be sufficient to satisfy the judgment. The jurisdictional value, however, plainly would not exist even if the vessel and its profits were treated as the matter in dispute, since, as we have seen, the appellant only asserts that the value of the vessel and the profits aggregated 38,000 pesos, less than $25,000. See, in this connection, the case of *Peyton* v. *Robertson*, 9 Wheat. 527, approvingly cited in the *Hilton Case*, *supra*.

We are unable to assent to the view that the case should be treated as having been consolidated with No. 80; in other words, that the two cases are in reality but one. The suits were separately commenced, and although tried together this was done for convenience and the cases were tried not upon the theory that they were consolidated, but

as being separate and distinct suits.   Thus, it is recited in the record that at the commencement of the trial, on February 28, 1906, it was stipulated "that these two cases, Nos. 3363 and 3365, may be tried together and that the defendants may amend their answer in 3365 as soon as they have opportunity, as of this date."   Again, in the course of the examination of one Taylor, a witness for the plaintiff, counsel for the defendant objected to a question, whereupon the following colloquy ensued.

"Mr. Odlin. We are trying both cases together, but I can take him off the stand and put him back.

"Mr. Gibbs. If this question is asked with reference to 3365, I desire to make the further objection to the introduction of the evidence, for the reason that the complaint in that case does not state a cause of action.".

The understanding of the trial judge that there was in fact no consolidation of the two cases is evidenced by the judgment which was entered by him, and that the Supreme Court of the Philippine Islands entertained the same view is shown by the judgment which it entered.

*As to No. 80.*   The objection is that the judgment of the Supreme Court of the Philippine Islands is not a final one. This objection must prevail for the reason that although involving a decision upon the merits of the case, the judgment of the Supreme Court contemplates and requires further proceedings in the lower court not inconsistent with its opinion.   *Clark* v. *Roller*, 199 U. S. 541.   The Supreme Court of the Philippine Islands did not in its judgment, as was done in the judgment entered in case No. 79, fix and determine the precise amount for which the trial court should enter judgment.   On the contrary, its direction was that judgment be entered "in favor of the plaintiff in accordance with the decision of this court." On referring to the opinion it is seen that the Supreme Court deemed that the plaintiff was entitled to a judicial determination of the amount of the indebtedness of Mar-

tinez to it. It is patent that the court found that the exact amount could not be determined without further proceedings, since it in effect left the case open in the trial court for a hearing upon the question of the amount of expenses incurred by the bank in and about the real property of Martinez of which it had taken possession. Thus, in the opinion of the appellate court, it was said:

"The net amount collected should be applied in reduction of the sum of 159,607.81 pesos, which according to the evidence the defendants owe to the plaintiff. When the case is remanded the defendants should have an opportunity to question the expenses claimed to have been met by the plaintiff in connection with its possession of these buildings, which it has deducted from the gross amount received."

It follows that although the appellate court fixed the rights and liabilities of the parties, it in effect referred a question in the case to the subordinate court for further judicial action; hence its judgment was not final for the purpose of an appeal or writ of error. *Drake* v. *Kochersperger,* 170 U. S. 303; *Clark* v. *Kansas City,* 172 U. S. 334. Until, therefore, the trial court by its judgment ascertains and fixes the actual indebtedness of the plaintiff and complies with the other directions contained in the mandate it cannot be said that a final decree has been entered in the cause. Indeed, on the very face of the decree of the Supreme Court of the Philippine Islands it is manifest that this court, if it took jurisdiction, could not finally dispose of the case in the event it affirmed the judgment below, since all it could do would be to consider the matters determined by the Supreme Court and do as that court did, remand the cause for further proceedings in order that the rights of the parties might be thereafter finally passed upon. But the foundation upon which rests the doctrine which, as a general rule, limits the appellate jurisdiction of this court to final judgments is that

cases should not be brought here by piecemeal through the medium of successive appeals.

The motion to dismiss the appeal in each of the cases must be granted.

*Dismissed for want of jurisdiction.*