13111

GRIFFIN *ET AL.* v. ALLENDALE BANK *ET AL.*

(158 S. E., 813)

February, 1930.

*Messrs. Brown & Bush* and *Thos. M. Boulware,* for appellants,

*Messrs. Randolph Murdaugh* and *Searson & Searson,* for respondents,

May 8, 1931. *Per curiam.*

Upon consideration of the petition herein, and a reconsideration of the appeal, it is ordered that the opinion filed April 8, 1931, be withdrawn, and that the following opinion be substituted in lieu thereof:

This is an appeal from an order of his Honor, Judge Henry, dated February 4, 1930, refusing an application of the plaintiffs, depositors in the Allendale Bank, for the appointment of a Receiver thereof. The action was commenced on January 7, 1930, and arose out of the following extremely complicated situation:

On January 19, 1927, three years before the institution of the present action, the directors of the Allendale Bank met and adopted a resolution that, on account of the fact that the bank had lately sustained heavy withdrawals by depositors, it would be to the interest of all depositors and other creditors that the affairs of the bank be placed in the hands of the State Bank Examiner for a period of 30 days, under Section 3981, Vol. 3, Code of 1922, and that a request to that end be preferred. The Examiner complied with the request of the directors, and immediately took over the possession and control of the property and business of the bank for the period indicated. During that period the corporation did not exercise either of the privileges extended to it by Section 3981, namely, to resume business, or with the consent of the Examiner to apply for an order of Court authorizing it to liquidate its affairs in the manner therein provided.

On February 14, 1927, the Examiner instituted a proceeding under Section 3985 for the appointment of a Receiver of the bank. Thereafter during the same month an order was passed by his Honor, Judge Shipp, on motion of counsel for the bank and with the consent of the Examiner, dismissing the application of the Examiner for the appointment of a Receiver, providing, however, that the application might be renewed should the bank fail to get its affairs in condition to legally resume business in the judgment of

the Examiner, and extending the time provided in Section 3981 for an additional period of 30 days; the period was further extended by order of his Honor, Judge Johnson, on March 6, 1927.

In the meantime, in the latter part of January, the following paper was executed by the officers and some of the directors of the bank:

"The undersigned depositors of the Allendale Bank, in consideration of the sum of one dollar to them in hand paid by the Allendale Bank, the receipt whereof is hereby acknowledged, and the further consideration of the benefit to them, and the saving of the expense of liquidation and receivership, which expense would admittedly and necessarily result in financial loss to the undersigned depositors, do hereby agree to release and relinquish unto the Allendale Bank 50% of the amounts of their respective deposits in the said bank, and do hereby discharge the said the Allendale Bank from all liability to the undersigned on 50% of the said respective deposits.

"And the undersigned depositors, for the above-mentioned considerations, do further agree to accept in full payment of their respective deposits the remaining 50% of the same after deducting the 50% hereinabove released, payment of the said remaining amount on their respective deposits to be made as follows, to wit:

"One-half of the said remainder shall be subject to the checks of the respective deposits upon the re-opening of the Allendale Bank for business, the same to be checked out as desired by the respective depositors in the usual manner. The remaining one-half of their respective deposits shall not be subject to payment until twelve months from the date of the reopening for business of the said bank, at the end of which time the said amounts shall be subject to the checks of the respective depositors.

"And in consideration of the release and discharge of the said depositors, the undersigned the Allendale Bank, does

hereby undertake and agree, subject to proper legal authority so to do, to reopen its doors and to resume its business of banking in the community of Allendale, and to use all means within its power for the preservation of the funds in its hands belonging to the depositors and to save for its depositors the expenses attendant upon Court proceedings and liquidation."

This paper was circulated among the depositors, and was signed by practically all of them, with the exception of certain public and secured depositors. (Note.—It does not specifically appear in the record for appeal that the plaintiffs signed the paper; but, as no question appears to be made about it, it is assumed that they did.)

. Before the Examiner would approve this arrangement and consent for the bank to reopen and resume business, he required the payment by certain stockholders of the sum of $15,000.00 into the bank, with the understanding that such payment would not lessen their statutory liability to depositors, the renovation of the bank's quarters, and the establishment of a new system of bookkeeping. These conditions were complied with, and the Examiner declared on March 30th that the bank was in condition to reopen and resume business, which it promptly did.

Thereafter the plaintiffs and all other general depositors who had signed the paper referred to were paid by the bank 25 per cent. of the deposits to their credit at the time of the closing of the bank, upon presentation of their checks therefor, and twelve months later were paid an additional and like amount.

It appears that the bank remained open and continued business the remainder of the year 1927, all of the year 1928, and until March 16, 1929. On that day an agreement was entered into between the Hampton Banking Company, a corporation doing business at Hampton in another county, and P. J. Fulmer, as attorney in fact and proxy of certain stockholders of the Allendale Bank, owning 200 shares of

the stock of that bank. By it the Hampton Bank assumed all of the liabilities of the Allendale Bank, which of course included its liabilities, if any, to its depositors; Fulmer, attorney in fact and proxy, assigned to Glenn, Murdaugh and Bristol, as trustees for the Hampton Bank, 200 shares of Allendale Bank stock, and all the assets thereof. The trustees were to supervise the management of the Allendale Bank. Out of the assets assigned to them the trustees were to pay the liabilities of the bank or assume the payment of them without recourse upon the bank. After the payment of the liabilities, and within six months thereafter, the trustees were to account to Fulmer as trustee for all of the stockholders, for all assets not so used or assumed, and turn over to Fulmer, trustee, "the proceeds of such remaining assets as shall have been converted into cash" and such assets as have not been. The agreement provides for the calling of a stockholders' meeting of the bank for the purpose of electing new directors, and submitting the agreement to them for ratification, and also to consider and pass upon the transfer of all of the assets of the Allendale Bank to a proposed banking corporation to be known as the People's State Bank. It does not appear in the record for appeal whether the stockholders' meeting was ever held and the agreement ratified as proposed; nor does it appear that the assets of the Allendale Bank were assigned to the proposed People's State Bank. It does appear that the People's State Bank occupied the building formerly occupied by the Allendale Bank, and in October, 1929, took over the assets of the Hampton Bank, including such assets of the Allendale Bank as had not been liquidated under the agreement referred to. On October 8, 1929, the Bank Examiner's report shows that the People's State Bank, as of that date, had in its hands assets formerly belonging to the Allendale Bank of the face value of $33,657.25 which it was proposed to turn over to a trustee for the benefit of the stockholders of the Allendale Bank, which, however, does not appear to have been done.

It does not specifically appear that the People's State Bank was authorized to take over the assets of the Allendale Bank, but it does appear that they did so, and are in possession of a large quantity of them, and it must be assumed that the Allendale Bank accomplished a transfer of them.

Upon this statement of facts his Honor, Judge Henry, in a formal order, refused the application for a Receiver, without giving any reasons for his refusal, and from that refusal the plaintiffs have appealed.

The plaintiffs contend that the agreement, Exhibit A, above set forth, by which it is claimed by the defendants that they released their entire claim against the bank on account of their deposits, is nonenforceable for want of consideration; that, if not, they still have a claim against the assets of the bank for 50 per cent. of their deposits.

The defendants contend that the agreement referred to was supported by a valuable consideration, and that payments by the bank to the plaintiffs of the percentages agreed upon constituted full satisfaction of the claims of the plaintiffs, and that, having released their claims, they have no further interest in the assets which would form a basis of their application for a Receiver.

That the agreement was supported by a valuable consideration we have no doubt; the local bank was on the rocks; the plaintiffs as depositors stood to sustain a loss consequent upon a liquidation of its affairs by processes of law; they were interested in its continuance as a going concern both as depositors and members of the community, with the hope of realizing much more than a legal liquidation with its consequent expense would give them; others were induced to do the same thing; some, as a part of the general plan put in fresh money; the agreement specifically declared this consideration: "The benefit to them and the saving of the expenses of liquidation and receiver-

ship, which expense would admittedly and necessarily result in financial loss to the undersigned depositors."

The plaintiffs, by accepting the benefits of the agreement, are estopped from denying its validity. See *Ex Parte Fant,* 147 S. C., 167, 145 S. E., 34.

The vital inquiry, however, is as to the extent of the so-called release and discharge; whether it was the intention of the parties to the agreement that the signatory depositors should release their entire claims against the bank, and receive nothing out of the assets over and above their 50 per cent., or whether the arrangement was for the temporary purpose indicated of reopening the bank and realizing what might come to them from a hoped for operation of the bank. It will be observed that, if they should be limited to the 50 per cent. of their deposits, this arrangement would inure to the benefit of the stockholders who were not at all parties to the agreement. It does not seem fair or just that those who were sacrificing to save the stranded ship should suffer for the benefit of those whose hands were idle.

We think that this conclusion is justified by the agreement of the bank, a part of Exhibit A, " * * * to reopen its doors and to resume its business of banking in the community of Allendale, *and to use all means within its power for the preservation of the funds in its hands belonging to the depositors* and to save for its depositors the expenses attendant upon Court proceedings and liquidation." The release should be limited to the manifest purpose in view, to reopen the bank and hope for better results. If it had been the intention of the parties that the signatory depositors should release all claims, the phrase in the agreement above italicized would have no meaning, as there would be no depositors to be benefited.

It appears to us, in consideration of the complicated conditions there is every necessity for the appointment of a Receiver who should insist upon an ac-

counting by the trustees under the agreement of March 16, 1929; if they have renounced or neglected the trust accepted by them, the reason for a recoupment of the assets is greater. He would also have a right to an accounting by the People's State Bank of the assets received by it from the Hampton Bank, assets which belonged to the Allendale Bank.

The judgment of this Court is that the order of his Honor, Judge Henry, be reversed, and that the case be remanded to the Court below for further proceedings consistent with the foregoing conclusions.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES COTHRAN and STABLER concur.