13280

GRISWOLD v. TEXAS COMPANY

(161 S. E., 409)

158

160

162

164

*Messrs. Frank G. Tompkins* and *Frank B. Gary, Jr.,* for appellant,

*Messrs. D. M. Winter, P. A. Cooper* and *J. B. McLauch-lin,* for respondent,

November 20, 1931.

The opinion of the Court was delivered by Mr. Justice Carter.

This action, commenced in the County Court for Richland County, March 11, 1929, is for recovery of judgment against the defendant in the sum of $3,000.00, based upon the alleged wrongful acts of the defendant in discharging the plaintiff as an employee of the defendant, the allegations of the complaint being as follows:

## "Complaint

"1. That plaintiff is a resident and citizen of the County of Richland, State of South Carolina.

"2. That the defendant is, and was at the times hereinafter mentioned, a corporation organized and existing under and by virtue of the laws of the State of Texas, and as such does business and has agents located in the County and State aforesaid, and said defendant corporation is engaged in the production, refining and sale at wholesale and retail of gasoline, oils and the various petroleum products, and reasonably worth several million dollars.

"3. That for about ten years prior to June, 1927, this plaintiff was in the employ of defendant and the greater portion of said time was its representative in what was known as zone No. 10, of said company, having headquarters at Columbia, S. C.

"4. That plaintiff was employed by the defendant for the year 1927, commencing January 1st, and ending December 31st of said year, at and for a fixed salary, payable monthly, plus certain commissions or bonus on all products of said company sold by plaintiff in said district, which had been built up by plaintiff so that plaintiff received altogether an average of about Three Hundred ($300.00) Dollars per month.

"5. That on the 1st day of June, 1927, without just cause or excuse, and in violation of said contract and agreement. the defendant herein dismissed plaintiff from its employ, and breached the contract and failed and refused to permit and allow plaintiff to perform his part thereof, although he was ready and willing to do so, and failed and refused to pay plaintiff the compensation to which he was entitled thereunder.

"6. That the Texas Company, defendant, had and maintained an insurance feature or policy whereby when a man died who had been in the employ of the company five years or more, his wife would draw his salary for an additional period of twelve months, which insurance had been earned and paid for by plaintiff and which plaintiff lost on account of the breach of said contract.

"7. That as additional compensation, the said defendant company allotted to each of its employees after two years' continuous service, running from January to January, an amount of the capital stock of said company equivalent in par value to ten per cent. of the amount actually earned by said employee for the preceding year and such privilege continued from year to year thereafter; that upon such allotment being made the employee of said company was

given the opportunity of either paying cash for said stock, if he desired to purchase same, or of paying for same in monthly installments to be deducted from his salary, and that plaintiff had purchased on said plan approximately 30 shares of the capital stock of said company, of the par value of Twenty-five ($25.00) Dollars per share, and on account of the breach of said contract, was forced to sacrifice and forfeit the said stock to the defendant company for the amount actually paid thereon, plus six per cent. interest, when, as a matter of fact, the said stock was worth at market value approximately Sixty ($60.00) Dollars per share.

"8. That for the year 1927, under the contract above set out, plaintiff was and would have been entitled to an allotment of at least ten shares of the said capital stock of said company at par value, which was then Thirty-five ($35.00) Dollars per share, and which stock was then worth on the market approximately Sixty ($60.00) Dollars per share.

"9. That plaintiff was at all times ready and willing to perform his duties under the said contract and plaintiff attempted to procure other employment during the remainder of the time said contract was in force, and would have obtained such, but was unable to do so, and remained without employment almost all of the remainder of the year 1927, from June 1st of said year.

"10. That on account of breach of said contract and the matter herein alleged, defendant is indebted to this plaintiff, and plaintiff has been damaged and injured in the sum of Three Thousand ($3,000.00) Dollars.

"Wherefore, plaintiff prays judgment against the defendant for the sum of Three Thousand ($3,000.00) Dollars and for the costs of this action."

The transcript contains the following agreed statement of counsel as to answer filed: "The defendant in due time served a verified answer to the unverified complaint, in which it was admitted that the plaintiff had been in the em-

ployment of the defendant and had been discharged on or about the date mentioned in the complaint, but alleging that the said discharge was within the terms of the contract which they had made with the plaintiff. In said answer, the defendant set up as a defense their plan for allowing employees to purchase stock and also their plan for insurance on their employees, and alleged that no benefits had accrued to the plaintiff under the terms there, and that he had received all the compensation to which he was entitled."

The plaintiff filed a reply to the new matter set up in the defendant's answer. Issues being joined, the case was tried at the June, 1930, term of said Court before Hon. M. S. Whaley, Judge of said Court, and a jury, resulting in a verdict for the plaintiff in the sum of $1,800.00. Motion for a new trial, made on behalf of the defendant, being refused, from judgment entered on the verdict the defendant has appealed to this Court, upon exceptions, imputing error to the trial Judge in several particulars.

## EXCEPTION 1

"The Judge erred in failing to direct a verdict for the defendant on the record and the grounds set out in defendant's motion therefor, the error being that the only reasonable inference to be drawn from the testimony was that there was a contract in existence in writing between the parties, which expressly provided that defendant had the right to discharge the plaintiff at any time, with or without cause, that the said written contract was acted upon and acquiesced in by both parties, and that when plaintiff was discharged by defendant, plaintiff accepted the discharge and made no claim that the defendant had no such right to discharge him under the terms of the contract then in existence; that plaintiff by accepting such compensations and stock allotment waived any right that he might have had under such amendment as plaintiff claims to have been in

existence, if there was such an amendment, and thereby became estopped."

The question raised by this exception is, as stated by appellant's counsel, was there a valid contract in writing between the parties?

It is the contention of the appellant that there was a valid written contract between the parties, the provision of which gave the defendant the right to discharge the plaintiff at will, and that it acted under said right and authority when it discharged the plaintiff; whereas the respondent contends that the paper in question, relied on by the appellant as giving such authority was not executed by him and that he is not bound thereby, and, furthermore, that, under an agreement of force between the parties, he was employed for a term of one year, commencing January 1, 1927, and ending December 31, 1927. The testimony on this question was in sharp conflict. According to the contention of the appellant, the paper referred to, which purported to give the defendant the alleged right to discharge the plaintiff at will, was sent the plaintiff to be executed by him, and that it was either signed by the plaintiff or by his wife, who it claimed had authority to represent the plaintiff, and returned to the defendant by mail. There was some testimony from which such inference might be drawn. On the other hand, in support of his contention, plaintiff introduced testimony which tended to prove that no written agreement was entered into for the time in question between the parties; that the plaintiff did not sign the paper relied on by the appellant as constituting a written agreement; did not know that the same had been mailed out for him until some time after it had been returned to the defendant; that it was received by the plaintiff's wife while the plaintiff was away from home and out of the city, and through a mistake plaintiff's wife signed his name to the paper and remailed it to the defendant, without any authority from the plaintiff to do so; that, as soon as plaintiff had learned of what

had been done, he took the matter up with the defendant through its regular manager in charge, and made known the mistake that had occurred, refused to be bound by the said paper and what had been done, and, as a result, the parties thereafter entered into a verbal contract whereby it was agreed between the parties that the plaintiff should be and was employed for the term of a year, beginning January 1, 1927, and ending December 31, 1927. The testimony on the question being in conflict and there being more than one reasonable inference to be drawn therefrom, the trial Judge, in our opinion, properly overruled defendant's motion for direction of a verdict and properly submitted the question to the jury.

As to the contention made by appellant, under this ■ exception, that the alleged written contract "was acted upon and acquiesced in by both parties, and that when the plaintiff was discharged by the defendant, the plaintiff accepted the discharge and made claim that the defendant had no such right to discharge him under the term of the (alleged) contract then in existence; that plaintiff by accepting such compensation and stock settlement waived any right that he might have had under such amendment as plaintiff claims to have been in existence, if there was such an amendment, and thereby became estopped," we deem it sufficient to state that, under the testimony, all of these questions were issues for the jury. The case of *Griffin v. Allendale Bank,* 160 S. C., 502, 158 S. E., 813, and the other cases cited by appellant do not control the case before us.

### EXCEPTION 2

"The Judge erred in charging the following principle of law: 'Now, in a case of this character, where one has been discharged, if you believe the contract was that he was to have it for the entire year, the burden would rest on the defendant to show you, by the preponderance or greater weight of the testimony, that there was cause for discharg-

ing him—but if he had a contract for a year, the master would have to show in this case that there was good cause for discharging him,' the error being that the same was an incorrect proposition of law which was prejudicial to defendant."

A reading of the entire charge, which will be reported ██ with the case, shows that the trial Judge placed no greater burden on the defendant than the law requires. The burden was on the plaintiff to prove, by the greater weight of the evidence, that he had a contract with the defendant for a term of one year, as plaintiff alleged, but once this allegation was proven, if it was so proven, it was then incumbent on the defendant to prove by the greater weight of evidence that there was just cause for the plaintiff's discharge in order to be relieved of liability to the plaintiff in damages growing out of such alleged unlawful discharge. In connection with his Honor's charge to the jury, attention is called to the cases of *Latimer v. York Cotton Mills*, 66 S. C., 135, 44 S. E., 559, and *Puryear v. Ould*, 81 S. C., 456, 62 S. E., 863.

## EXCEPTION 3

"The Judge erred in admitting, over objection of the defendant, the testimony of the plaintiff as to his intentions of what he would have done in the absence of the alleged promise of Jones, the agent of the defendant; the error being that the same was incompetent, inadmissible and highly prejudicial to the defendant."

This exception is too general, and is objectionable ██ upon that ground, but, waiving such objection, the exception cannot be sustained. In our opinion, it was proper for the plaintiff to explain to the Court and jury the effect the promises made by the defendant, through its manager, Jones, had on the plaintiff and how such promises shaped his course of action.

## EXCEPTION 4

"The Judge erred in admitting, over defendant's objection, the testimony of plaintiff concerning the provisions and operation of the stock allotment plan, the error being that the same was inadmissible and not the best evidence, and was prejudicial to the defendant, the stock allotment plan being in writing and speaking for itself."

The trial Judge seems to have ruled with the appellant as to the admission of the testimony now complained of, except as to the plaintiff's understanding of the difference in the two stock allotment plans, and it was upon this that he was allowed to tell what he knew about it; it not being clear as to the difference in the two plans. At this juncture it appears that the trial Judge stated, in effect, that he would construe the papers. We are unable to see wherein the defendant was prejudiced. In this connection attention is called to the case of *McGregor v. Hurst*, 140 S. C., 464, 138 S. E., 865.

## EXCEPTION 5

"The Judge erred in admitting, over defendant's objection, copies of stock allotment, the error being that the same were only copies, no notice to produce the original was served nor proof of loss made, defendant was unprepared and taken by surprise, and the admissions were highly prejudicial to defendant's case."

It appears that the papers referred to under this exception, called "stock allotments," and signed by the defendant, were furnished the plaintiff by the defendant, and, also, that they were duplicates of the originals. In either case, they were competent evidence, and the trial Judge committed no error in allowing the same to be introduced in evidence.

The remaining exceptions, 6 and 7, appear to have been abandoned. We may state, however, that, in our opinion, the same are without merit.

The exceptions are overruled, and the judgment of the lower Court affirmed.

Mr. Chief Justice Blease and Mr. Justice Stabler concur.

Mr. Chief Justice Blease (concurring) : The evidence of waiver on behalf of the appellant was very strong, and I am inclined to think the issue as to that should have been decided by the jury in its favor. But "unless * * * waiver * * * is practically conceded * * * or the evidence shows it without question * * * when an issue of that kind is raised," the party against whom waiver is alleged "should have the * * * right * * * to have a jury's decision." *Walker v. New Amsterdam Casualty Co.*, 157 S. C., 381, 154 S. E., 221, 225.

Mr. Justice Bonham (dissenting) : It is with reluctance that I dissent from the main opinion in this case, written by Mr. Justice Carter. Aside from the high regard I have for his opinions, there are certain factors in this case which add to the reluctance with which I dissent from the affirmance of the judgment of the lower Court. I have little patience with that harsh class of contracts in which the employer reserves the right to discharge his employee at his will or whim, with or without cause. Such a contract figures in this case as a dominant element. A cardinal question is whether there was a written or an oral contract for the year 1927 between the parties plaintiff and defendant here, and whether plaintiff by his conduct in connection with such contract has debarred himself of the right to maintain this action. I think he has; hence this dissenting opinion.

Plaintiff had been in the employ of defendant, hereinafter spoken of as the company, for a period of ten years up to the year 1927. Each year the parties had entered into a written contract which contained the provision that the company might discharge plaintiff at will, with or without cause. Some time in February, 1927, the company's manager sent from his office in Atlanta, Ga., to plaintiff at Columbia,

S. C., a written contract for the year 1927 in terms exactly like those which had been in use between them for ten years. It was already signed by the proper officers of the company. It was returned to the company with the name of plaintiff signed to it. Plaintiff claims that the copy of the written contract came to his office in his absence; that his wife, who assisted him in the clerical work of his business and sometimes signed his name to papers, signed his name to this contract and returned it without his knowledge; that upon his return home he learned of this and immediately notified the company's manager, Mr. Jones, that he had not signed the written contract, and would not be bound by it; that he objected to the provision which gave the company the right to discharge him at will, and demanded a contract for a year, to begin January 1, 1927, and end December 31, 1927; that negotiations were carried on verbally, in person and over the phone; that Mr. Jones acceded to plaintiff's demands that the contract be amended to state that the period of plaintiff's employment extended from January 1, 1927, to December 31, 1927; that Mr. Jones promised to write him a letter to this effect, but never did it; that with the exception of this change the contract remained as written. The defendant denies that any change in the contract was suggested or made. That issue was submitted to the jury and found against defendant. In the view which I take this makes no difference.

The contract contains a provision that employees of a certain standing of time in point of service with the company should have the right to have allotted to them shares of the stock of the company which could be paid for in cash or by deduction from the monthly salary of the employee. Plaintiff had certain allotments made to him for the payment of which deductions were made from his monthly salary. The stock had not been paid for when he was discharged. It was a condition of this provision that, if the employee was discharged, or left the employ of the com-

pany before he had paid for the shares allotted him, he should receive back the money he had paid with interest at 6 per cent. There was also a provision relating to the insurance of the employee, but, on the trial of the case, the trial Judge eliminated the claim of plaintiff to recover on that score, and there is no appeal from his ruling.

When plaintiff was discharged in June, 1927, the company settled with him by paying him the salary then due him and the money he had paid on his stock allotments, with 6 per cent. interest. The plaintiff did not then demand any other settlement, nor make claim for any other thing due him by the company. He accepted the settlement and retained the money, and to this day has not offered to return it.

March 11, 1929, nearly two years after his discharge, he brings action to recover what he claims was due him as salary for the balance of the year 1927, and for certain profits which he alleged he lost on his stock allotments because he was not allowed to complete paying for them, and for some time on the insurance provision of the contract. The last item was, as hereinabove stated, eliminated at the trial.

Defendant moved for directed verdict on the ground, among others, that plaintiff, having accepted his discharge and the settlement made with him under the terms of the contract, had waived any other claims and was estopped to maintain this action. There were other grounds of the motion, but this is the only one I shall consider. After verdict for plaintiff, defendant moved for new trial on practically the same grounds as those upon which his motion for directed verdict was predicated. That motion, too, was overruled. Then followed this appeal.

When plaintiff settled with the company for the salary then due him and return of the money which he had paid on his stock allotments, with the interest thereon, he settled upon the terms of the contract as he himself had had it amended. He knew what were the provisions relating to the

stock allotments and to settlement in case of discharge or resignation of the employee. He did not then say, "I refuse your money, I demand the right to continue in your service under the amended contract and complete the payments for my stock allotments so that I may have whatever profits or benefits may then accrue." He and his wife testify that, when he received the letter of May 28th discharging him, they went to Atlanta to see the manager, Mr. Jones. He was absent. She talked to him over the phone. She testifies that Mr. Jones said: "Go back to Columbia and let things go as I have planned, Mr. Ingram will be there Tuesday, I will work something out for Mr. Griswold." She did not say, "You cannot discharge Mr. Griswold; his contract is for the year." She knew Mr. Ingram was coming to check Mr. Griswold out because he was discharged. The utmost that can be deduced from her testimony is that they relied on Mr. Jones to work out something for Mr. Griswold. That in itself is an acceptance of the discharge and a tacit acknowledgment of the right to discharge him. He accepted the settlement, took the money, and has retained it till this day.

To my mind this is a typical case of waiver, the voluntary relinquishment of a known legal right; and from this premise follows the corollary that plaintiff has now estopped himself to assert this claim.

He who does not speak when he should will not be heard to speak when he would.

I think the judgment below should be reversed.

MR. JUSTICE COTHRAN concurs.