THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Jimmy C. Montgomery; Gloria M. Jenkins; and Judith Allen,
Respondents,
v.
David Robinson, Jr.; Eleanor Coard; Josie M. Griffin; Mary G. Montgomery; Hazel M. Graham; Mary Lee Dingle; Willie W. Montgomery; Theresa M. Robertson; Anthony M. Montgomery; Delores M. Williams; Daryl Montgomery; Cassandra M. Montgomery; Almeta Montgomery; Jacqueline Williams; JoAnn Tilley; Ruth Ann Montgomery; Alvertis Montgomery, Jr.; Willie M. Montgomery; Minnie S. Montgomery; Marilyn Lee Montgomery; David Montgomery; and John Doe and Mary Roe, and all other persons unknown claiming any right, title, estate lien or interest in the real property described in the complaint or any claim adverse to Plaintiffs ownership or any cloud on title thereto, Defendants,
of whom Mary G. Montgomery; Hazel M. Graham; Mary Lee Dingle; Willie W. Montgomery; Theresa M. Robertson; Anthony M. Montgomery; Delores M. Williams; and Daryl Montgomery are,
Appellants.
 
 
 

Appeal From Clarendon County
William C. Coffey, Jr., Circuit Court Judge

Unpublished Opinion No. 2006-UP-272
Submitted May 1, 2006  Filed June 8, 2006

AFFIRMED

 
 
 
M. M. Weinberg, Jr., of Sumter, for Appellants.  
William E. DuRant, Jr., of Sumter, for Respondents.
 
 
 

PER CURIAM:  Appellants challenge the trial courts order finding no agreement to subdivide property existed and, if it did, the agreement was insufficient to satisfy the statute of frauds.[1]  We affirm.[2] 
FACTS
The late David and Minnie Robinson owned 141.7 acres in Clarendon County.  During a previous marriage, Minnie had two children, Willie and Alvertis Montgomery.  David and Minnie adopted one child, David, Jr.  
Minnie died intestate in 1964; Alvertis died in 1974 survived by his wife, Almetta, and eleven children; Willie died testate in 1984 survived by a wife and three children, including Henry Montgomery, Mary Montgomerys husband; David died in 1987, and his interest in the property passed to David Jr.  
On December 11, 2000, some of the parties with interest in the property met and divided the property on a hand-drawn map with the various parcels color-coded.  The land was divided into three parcels with one going to David Jr., one to heirs of Alvertis, and one to heirs of Willie.  The reverse side of the map contained the following notation:  Agreed to colors in division on front of this sheet so that David Jr. receives 22 acres, Almetta [Alvertis wife] 20 acres, children of Alvertis 40 acres, Willies heirs 60 acres.  The following notes were handwritten beside the map:

 
 
 
 Total acres: 
 141
 
 
 David
 Jr.   
 22
 
 
 
                  
 * * *
 
 
 
 Alvirtis (sic)
 59.5
 
 
 Willie  
 59.5
 
 
  
 
 
 
 Alvirtis (sic) heirs                 
 
 
 
 4.96 [a]cres each
 
 
 
 

The document was signed by those present.  The agreement was confirmed at a subsequent meeting on November 13, 2001.[3] 
In addition to the coding and handwritten notes concerning the division of the property, there were some handwritten notes relating to the subdivision of Willies share.  Next to the map, Gloria Jenkins, one of Alvertis eleven children, wrote the following:  

 
 
 
 Willie heirs  
 11.9 acres each
 
 
 Henry-Mary[4]
 
 
 
 
 J.C.
 
 
 
 Kitty
 
 
 
 Josie
 
 
 
 Eleanor
 
 
 
 

Appellant Mary Montgomery maintained this handwritten note constitutes a separate agreement among Willies heirs. 
By consent order dated September 15, 2003, the parties agreed to the overall, primary division of the property.  However, Mary still contended that the notations as to Willies share constituted an agreement regarding the subdivision of Willies share.  The consent order therefore contained a reservation for Mary to bring before the Court and have full opportunity to address and seek a determination of the issue of a settlement agreement existing as to the property allotted to her by agreement purportedly reached in or about December 2000 . . . .  The 2003 order attached the parties map as an exhibit.  
Mary Montgomery moved for a determination that she was entitled to the 11.9 Henry-Mary acreage and 11.9 additional acres based on a side agreement she allegedly made with another heir, Josie, to purchase 11.9 acres.  She further contends that in reliance on the notes written on the map, she purchased the 11.9 acres from Josie and paid a large portion of the fee for the preparation of the survey.  
The court declined to further divide the property as requested, finding a failure to prove the existence of a separate agreement to subdivide Willies share of the property.  The court further ruled any such agreement must be in writing to satisfy the statute of frauds.  
LAW/ANALYSIS
The Agreement
Appellants argue the notation placed by Gloria Jenkins on the agreement proves the existence of a separate contract subdividing Willies parcel among his heirs.  Appellants also argue the separate contract satisfies the statute of frauds. 
The burden to prove the existence of a binding contract is on the party alleging the contract.  Griswold v. Texas Co., 163 S.C. 156, 173, 161 S.E. 409, 414-15 (1931).  A contract requires a meeting of the minds of all parties involved.  Hughes v. Edwards, 265 S.C. 529, 536, 220 S.E.2d 231, 234 (1975).  We find insufficient proof of a contract to subdivide Willies property.  Gloria Jenkins testified she placed the notations on the agreement, simply dividing the 141 acres according to the family members.  Jenkins denied there was any agreement that the acres allotted to Willies heirs would be partitioned as noted.  The attorneys present at the parties meetings swore in affidavits that the written agreement contained the terms agreed upon as to the primary division, but they were unaware of any agreement reached among the parties for a further subdivision.  Finally, only two of the eleven heirs affected by the alleged subdivision were present at the meeting when the notes were written.  We find insufficient proof of a contract.  
Because no contract existed, we need not reach the issue of whether the statute of frauds[5] would preclude enforcement of the alleged contract.  See Player v. Chandler, 299 S.C. 101, 105, 382 S.E.2d 891, 894-95 (1989) (the statute of frauds requires a memorandum or note of an agreement relating to real estate to be in writing and signed by the party to be charged); Ruff v. Hudspeth, 122 S.C. 391, 395, 115 S.E. 626, 627 (1923) (the statute of frauds requires the writing to contain all of the essential elements of a contract).
Estoppel
Appellants also argue entitlement to the property based upon promissory estoppel.  Mary Montgomery alleges she personally paid more than her fair share of the survey costs in reliance on the alleged agreement. 
The trial court did not specifically rule on promissory estoppel, thus the issue is not preserved for review.  Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (an issue not ruled upon by the trial court is not preserved for appellate review).  
AFFIRMED.
HUFF, STILWELL, and BEATTY, JJ., concur.

[1]There is some uncertainty whether all the named appellants are indeed appealing the trial courts order.  It is nevertheless clear that Mary Montgomery is the principal, if not the sole, appellant.  We refer to them collectively as Appellants.  
[2] We decide this case without oral argument pursuant to Rule 215, SCACR.
[3] The nonparticipating parties apparently agreed with the division, according to a note on the confirmation.
[4] Mary Montgomery.
[5] S.C. Code Ann. § 32-3-10 (1991).